**C.B., Appellant**

v.

**J.B. and M.B. and T.B., Appellees.**

Superior Court of Pennsylvania.

Argued Aug. 21, 2012.

Filed April 22, 2013.

Bradley G. Olson, Jr., New Castle, for Appellant.

Shawn B. Olson, Hermitage, for J.B., Appellee.

BEFORE: MUSMANNO, J., BOWES, J., and WECHT, J.

OPINION BY WECHT, J.

In this appeal, we are called upon squarely to determine the point in time at which a trial court must specify the reasons for its decision in a child custody case. We address this question under the "new" Child Custody Act ("the Act"), which our General Assembly enacted in November 2010, and which took effect in January 2011.[1]

In this case, C.B. ("Aunt") appeals the custody order entered on October 24, 2011. That order awarded primary physical custody of G.B. (born December 2004) and K.B. (born November 2003) to their paternal uncle, J.B. ("Uncle"), from whom Aunt is separated. To decide this appeal, we must address the timing of the trial court's application of the sixteen custody factors delineated in the Act.

We hold today that the Act requires a trial court to address each of these factors prior to the deadline by which a litigant must file a notice of appeal, and preferably at the time the custody order is issued or shortly thereafter. We apply this holding prospectively, as the trial court here was not bound to anticipate this construction of the Act.

As we explain below, because Aunt was not prejudiced by the timing of the court's attempt to comply with the terms of the Act in this case, we affirm.

On May 15, 2007, following juvenile dependency proceedings, the trial court appointed Aunt and Uncle as permanent legal guardians of G.B. and K.B. The court's order provided the birth parents, M.B. and T.B. ("Birth Parents"),[2] two hours of visi-

---

1. 23 Pa.C.S. §§ 5321–5340. The legislation substantially revised Chapter 53 (child custody) of Title 23 (Domestic Relations). It frequently has been called the "new" custody law, although this label is becoming less apropos as time goes by.

2. The trial court added Birth Parents as parties during the custody litigation because they had participated in monthly visitations with the children since 2007. Although our caption identifies the birth parents as appellees, they have not participated in this appeal. Nevertheless, during the proceedings below, Birth Parents stated a custody preference in favor of Uncle. Notes of Testimony ("N.T."), 10/24/11, at 8–9, 13.

tation per month, plus portions of certain holidays. The court expressed a goal of increasing Birth Parents' contact with G.B. and K.B., provided that the contact was in G.B.'s and K.B.'s best interests.

Aunt and Uncle separated in December 2010. Uncle departed the marital residence with G.B. and K.B. in order to reside with his paramour. Thereafter, on January 14, 2011, Aunt filed a complaint seeking primary physical custody of the children. Following several preliminary custody proceedings, including Uncle's petitions for special relief and for relocation with the children, Aunt's substance abuse evaluations, and court-ordered child custody evaluations, the trial judge held a two-day custody hearing on October 21 and 24, 2011. While only Aunt, Uncle, and Birth Parents testified during that hearing, the court incorporated testimony presented by other witnesses during the prior proceedings. At the close of the custody hearing, the trial court entered the above-referenced order, which awarded Uncle primary physical custody of G.B. and K.B., and granted Aunt periods of partial custody.

Prior to rendering its decision, the trial court articulated on the record two of the reasons for its decision, pursuant to 23 Pa.C.S. § 5323(d). The trial court further stated that it had considered all of the statutory factors enumerated in section 5328(a) in order to determine the children's best interests. The trial court did not address each of those factors on the record at that time.

Aunt filed a timely notice of appeal and a concomitant statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In response, the trial court filed a Pa.R.A.P. 1925(a) opinion, along with extensive findings of fact and conclusions of law that expounded in detail upon the court's reasoning and analyzed at length the Act's sixteen statutory factors.

Aunt presents the following questions for our review:

1. Whether the trial court abused its discretion and committed reversible error in failing to consider all factors set forth in 23 Pa.C.S. § 5328 before entering the October 24, 2011, Custody Order?

2. Whether the trial court abused its discretion by providing [Uncle] with a preferred status for custody because of his biological relationship to the minor children?

3. Whether the trial court abused its discretion and committed reversible error by drawing improper and unfounded inferences from [Aunt's] nationality and perceived communication barriers and potential educational setbacks resulting therefrom?

Aunt's Brief, at ii.

■ At the outset, we observe that, although Aunt filed her custody complaint on January 14, 2011, the Act applies to this case, inasmuch as the ensuing custody proceedings occurred after January 24, 2011, the effective date of that new law. *C.R.F., III v. S.E.F.*, 45 A.3d 441, 445 (Pa.Super.2012) ("[I]t is the date of the commencement of the hearing that determines whether the Act applies, not the date the petition or complaint was filed.").

In the Act, our General Assembly identified sixteen factors that trial courts must consider in determining the best interests of a child at the time that custody is awarded. Those factors are as follows:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwilling-

ness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

The trial court addressed these statutory factors at two separate junctures in this case. First, the court made the following pronouncement on the record:

> Two of the key factors for me is [*sic*] one is the blood relationship, and two is I don't believe Lawrence County would have been looking to the family absent that kinship relationship. But once it did, of course, that kicked in the right of [Aunt], because of her years of helping to take care of the kids, it kicked in custody rights in her. I also think that the language barrier has some play in it as a difficulty, as well as all the other factors and information that we have received over three or four days of hearings.

N.T., 10/24/11, at 23. The court continued: "So I have considered all of the factors that are listed in the new custody statute now, and I believe it is in the best interest that [Uncle] have primary." *Id.* Ultimately, the trial court provided a comprehensive discussion and analysis of each of the factors in its Pa.R.A.P. 1925(a) opinion and in its findings of fact and conclusions of law.

In her first issue, Aunt essentially challenges what she perceives as the trial court's disjointed consideration of the sixteen statutory factors. Aunt maintains that the trial court must do more than merely state that it considered those factors. Aunt argues that, in order to afford

litigants an adequate opportunity to challenge a trial court's rationale on appeal, a trial court must address each of the sixteen factors at some point before a notice of appeal must be filed. For the reasons that follow, we agree. However, we do not find that Aunt is entitled to relief in this case.

■ In cases involving statutory interpretation, our standard of review is well-settled:

[T]he interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary.

*In re Adoption of J.A.S.*, 939 A.2d 403, 405 (Pa.Super.2007) (citations omitted).

■ In interpreting a statute:

[We] are constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501–1991. The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage. Under Section 1921(c), the court resorts to considerations of "purpose" and "ob-

ject" of the legislature when the words of a statute are not explicit.... Finally, it is presumed that the legislature did not intend an absurd or unreasonable result. In this regard, we ... are permitted to examine the practical consequences of a particular interpretation.

*Id.* at 405–06 (citations, brackets, and parentheticals omitted). We also "presume that the General Assembly is familiar with extant law when enacting legislation." *White v. Conestoga Title Ins. Co.*, — Pa. ——, 53 A.3d 720, 731 (2012).

■ Section 5328's introductory language states: "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child[.]" The quoted language does not identify the point in the proceedings at which this consideration must occur.

Although section 5328 does not resolve the timing issue, section 5323 sheds some light on it. After considering the sixteen custody factors enumerated in section 5328, a trial court may award one of several types of custody to a party. 23 Pa.C.S. § 5323(a). Section 5323 mandates that, when the trial court awards custody, it "shall delineate the reasons for its decision **on the record in open court or in a written opinion or order.**" *Id.* § 5323(d) (emphasis added).

The statute does not specify the point in time at which the court must comply with this requirement. Prior to the enactment of this provision as part of the Act, there was no requirement that a trial court give any reason for its custody decision, subject only to the caveat that the court was obliged to provide a comprehensive opinion in the event of an appeal, in order to enable adequate review. *Coble v. Coble,*

323 Pa.Super. 445, 470 A.2d 1002, 1004 (1984).

In its most common usage, a written opinion refers to the Pa.R.A.P. 1925(a) opinion that the trial court produces in response to a notice of appeal. The rule dovetails with the long-standing requirement that the trial court prepare an opinion in the event of an appeal. *See Coble, supra.*

On its face, section 5323(d) appears clear and unambiguous. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Section 5323(d) does not contemplate a specific time period for compliance with section 5328. By its terms, a trial court need only make a custody decision and, at some point, address the factors in open court, in an order, or in an opinion. Thus, it appears that the trial court here complied with the statute by addressing certain factors in open court and the remaining factors in its Pa.R.A.P. 1925(a) opinion.

However, the enactment of section 5323(d) would not have been necessary simply to perpetuate or maintain this preexisting requirement. The use of "shall" means that the trial court must "delineate the reasons for its decision." To hold that the trial court may withhold its reasoning unless and until it issues a Rule 1925(a) opinion would be to flout the legislative will. First, under such an interpretation, a trial court might delay in explaining the basis for its ruling for as long as it retains jurisdiction, potentially until after the expiration of a litigant's time to appeal the custody ruling. We must perforce construe the statute in a way that accounts for this contingency. Second, such an interpretation would mean that a trial court might never delineate its reasons; inasmuch as most custody decisions are not appealed, many custody cases necessarily would entail judicial violation of the Act. The trial court could defer explaining its rationale until an appeal, if any, required the court to give the reasons for its decision. This would guarantee that, in many cases, the trial court would never comply with the statute. If no appeal were filed, the court would not need to file an opinion, and its reasoning would never be stated or known. This interpretation would render the mandatory language of § 5323(d) meaningless. It would nullify the statute or render its language mere surplusage. Plainly, this result is not what was intended by the General Assembly. We cannot ignore the mandatory language codified in the Act.

■■ "Our goal in statutory interpretation is to 'ascertain and effectuate the intention of the General Assembly,' and we strive to give effect to all the provisions in a statute." *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.,* 746 A.2d 1118, 1121 (Pa.Super.1999) (citing 1 Pa.C.S. § 1921(a)). "In so doing, we must begin with a presumption that our legislature did not intend any statutory language to exist as mere surplusage. Accordingly, whenever possible, courts must construe a statute so as to give effect to every word contained therein." *Wiernik v. PHH U.S. Mortg. Corp.,* 736 A.2d 616, 621–22 (Pa.Super.1999); *see Commonwealth v. Bailey,* 986 A.2d 860, 863 (Pa.Super.2009) ("In interpreting a statute, we are to give effect to all the language of the statute and we may not render any language superfluous or assume language to be mere surplusage.").

To interpret section 5323(d) so as to permit a trial court to forego addressing the factors until it issues its Pa.R.A.P. 1925(a) opinion—*i.e.* after a party has filed an appeal and a concise statement—renders that section's language mere surplus-

age. Under such an interpretation, if a party decides not to appeal the custody order, and the trial court does not address the factors contemporaneously with the custody order, the court may never address the factors. However, the Act's language requiring the trial court to do so is clear and unequivocal. *See* 23 Pa.C.S. §§ 5328 ("[T]he court *shall* determine the best interest of the child by considering all relevant factors ...") (emphasis added); 5323(d) (The court "*shall* then delineate the reasons for its decision on the record in open court or in a written opinion or order.") (emphasis added). Such an interpretation would all but guarantee that, in many cases, compliance with the Act would never occur. This result clearly is not what the General Assembly intended in promulgating the new Act, because it would render the mandatory language in section 5328 and section 5323 meaningless.

While the failure of a trial court to comply with the Act in such circumstances may not have immediate consequences if no party files an appeal, future litigation could be compromised. Even if neither party appeals, a lack of explanation from the trial court at or near the time of the ruling can be harmful. As the best interests of children are mutable, custody matters often are continuous and ongoing, or at least episodic. If the court does not articulate its reasoning, a litigant seeking modification of a custody order in the future would not know what factors the trial court relied upon in fashioning that order. The litigant would not know what behaviors or circumstances could be changed in order to improve the chances of a different custody outcome and in order to maximize the child's best interests, as those interests might be perceived by the trial court.

 Courts also must not interpret a statute in a manner that leads to an absurd result. *See Wilson v. Central Penn Indus., Inc.*, 306 Pa.Super. 146, 452 A.2d 257, 259 (1982) ("A construction which fails to give effect to all provisions of a statute or which achieves an absurd or unreasonable result must be avoided.") (citations omitted); *Commonwealth v. Sloan*, 589 Pa. 15, 907 A.2d 460, 467 (2006) ("[O]ur rules of statutory construction [forbid] absurd results."). Interpreting section 5323(d) in a manner that permits a trial court to delay addressing the Act's sixteen custody factors until the preparation of its Pa.R.A.P. 1925(a) opinion yields an absurd and unreasonable result.

Such an interpretation would leave litigants in the untenable position of having to navigate the initial stages of the appellate process blind. A custody litigant must first decide whether to appeal at all, a decision that involves potentially significant commitments of financial resources and time, as well as emotional and psychological stress. While Aunt herein was aware of aspects of the trial court's custody reasoning because the court thoughtfully provided some explanation in open court, other parties in other cases may have to make this decision with no idea whatsoever as to how the trial court applied the sixteen factors. Similarly, attorneys cannot intelligently advise their clients whether to pursue an appeal without first knowing how the court assessed the sixteen statutory factors in reaching its decision.

Once the decision to appeal has been made, if the trial court has not yet revealed its reasoning, the parties face the equally challenging task of filing a Pa. R.A.P. 1925(b) statement of errors complained of on appeal without any insight whatsoever into the trial court's ruling. This puts a losing party between the proverbial rock and hard place. As noted, lawyers would be in the untenable position of attempting to advise clients whether to

make the financial and emotional commitment to pursue an appeal without adequate information upon which to base that advice. The parties typically submit a substantial amount of information to the trial court, including testimony from the parties and experts. An appealing party is left to guess as to which information the trial court found pertinent, and how the evidence informed the court's analysis of the Act's sixteen custody factors. After engaging in such speculation, the party must then take that information and develop concisely stated issues for appellate review in the 1925(b) statement. By rule, such issues must be stated with particularity, and anything that the party does not include in the statement is waived. *See Klos v. Klos,* 934 A.2d 724, 731 (Pa.Super.2007). Thus, if the party guesses wrong, and omits discussion of an issue or fact that the trial court later states that it found to be pertinent, that issue may be waived. Moreover, to avoid waiver for non-inclusion in the Pa.R.A.P. 1925(b) statement, a party would have to guess at all the possible issues that might arise from the trial court's ultimate explanation of the bases for its ruling. This could subject the party to waiver for over-inclusiveness or vagueness. *See Jones v. Jones,* 878 A.2d 86, 90 (Pa.Super.2005). It would be absurd to believe that the General Assembly intended to force custody litigants to navigate blindly and speculatively through proceedings on appeal.

These problems are complicated further by the fact that, in children's fast track custody cases, a litigant must file his or her Pa.R.A.P. 1925(b) statement contemporaneously with a notice of appeal. *See* Pa.R.A.P. 1925(a)(2)(i). Due to that acceleration of the appellate clock, a transcript is rarely available for the litigant or attorney to review in preparing the concise statement. Unlike civil and criminal cases in which potential appellants may seek explanations for trial court decisions through post-trial or post-sentence motions, domestic relations matters permit no post-trial practice, except through motions for reconsideration. Pa.R.C.P. 1930.2. Moreover, we cannot blind ourselves to the patent reality that domestic relations dockets involve large numbers of pro se litigants who are unfamiliar with appellate rules and practice. These circumstances, as well as the foundational and irreducible importance of child custody, buttress the conclusion that the legislative mandate to "delineate the reasons" for custody decisions is a mandate to do so at or near the time of verdict.

The problem can be alleviated without substantial hardship to any party or the trial court. The trial court is required by the Act to address the factors. The statute, as we construe it today, compels the trial court to perform its mandatory function early enough in the process to permit litigants to move forward, equipped with the information demanded by the legislature. We impose upon the trial courts no additional burdens or analyses not already required by the Act. This rule eliminates any potential risk that a party will fund and pursue an unnecessary appeal or, worse, suffer waiver of any issues on appeal. With the custody of a child at stake, our law cannot require a parent to speculate as he or she attempts to preserve his or her appellate rights.

On at least one other reported occasion, we have encountered a challenge under section 5323. *See M.P. v. M.P.,* 54 A.3d 950 (Pa.Super.2012). In *M.P.,* the mother sought permission to travel outside the country with her daughter after the father refused to agree to the travel. *Id.* at 951. The trial court issued an order prohibiting mother's travel with her daughter, which order offered no explanation. *Id.* at 952. The mother asserted the trial court's non-

compliance with section 5323(d) as one of her issues on appeal. With little discussion, because this Court remanded on other grounds, we held that the trial court erred when it "failed to provide its reasoning until the appeal was taken." *Id.* at 956.

Consistent with our holding in *M.P.*, we now hold that section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen factors prior to the deadline by which a litigant must file a notice of appeal.

An aggrieved custody litigant has thirty days to file a notice of appeal and a concise statement of errors complained of on appeal. We would betray the rationale underlying our ruling if we were to permit the trial court to set forth its consideration of the factors on the twenty-ninth day. Nonetheless, we recognize as well that promulgation of a bright-line rule with which trial courts must comply might well exceed the boundaries of our authority as an intermediate appellate court. Ideally, trial courts should address the statutory factors, either orally in open court or in a written opinion, contemporaneously with the issuance of the custody order. If, because of the court's substantial case load or other factors, compliance with the Act is not possible contemporaneously with the order, the trial court should indicate in the custody order that its examination of the factors is forthcoming shortly, so as to not impede a litigant's ability to pursue an appeal if the litigant so chooses. This affords the trial court some flexibility in carrying out its function, while also providing litigants a reasonable amount of time to analyze the trial court's rationale, to determine whether to appeal, and to decipher which issues might be meritorious in that appeal. Ultimately, the appropriate body to promulgate rules of general application in this area (including prescription of any specific time deadlines) is either our General Assembly or our Supreme Court.

■ In the case *sub judice*, the trial judge announced in open court "[t]wo of the key factors for me" which, along with "all the other factors", led him to his decision. N.T., 10/24/11, at 23. Then, in its Pa.R.A.P. 1925(a) opinion, the court addressed all of the sixteen factors prescribed by section 5328. Because the trial court complied substantially with the Act as it was interpreted prior to our decision today, and because Aunt has not demonstrated that any of her issues were forfeited by virtue of the trial court's approach in this case, we discern no reason to remand this case to the trial court for further proceedings. However, from this day forward, trial courts must comply with the Act as we construe it herein.

We turn now to Aunt's remaining arguments, which we review in conjunction with one another. In her second issue, Aunt argues that the trial court erred in expressing a preference in favor of awarding custody to Uncle because he is a biological relative of G.B. and K.B., and because Aunt is not. Aunt maintains that, since both parties stood *in loco parentis* to the children, she and Uncle were entitled to equal consideration in a custody determination.

■ In her third and final issue, Aunt asserts that the trial court erred by drawing an improper inference from Aunt's difficulty in communicating with the children. Aunt contends that the record does not sustain the trial court's determination that the communication impediments adversely affected the children's best interests. In this regard, Aunt also raises an equal protection argument, wherein she identifies herself as a member of a class of foreign-born parents and challenges what she characterizes as the trial court's suspect and discriminatory consideration of her na-

tionality in contravention of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[3] For the reasons that follow, we find Aunt's arguments unpersuasive.

In reviewing custody orders, our scope and standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is an abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F.*, 45 A.3d at 443 (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35–36 (Pa.Super.2010) (internal citations omitted)).

The following principles are relevant to our resolution of Aunt's equal protection argument:

When addressing an equal protection challenge, we must initially ascertain the appropriate degree of scrutiny to which the challenged act is to be subjected. Equal protection analysis recognizes three types of governmental classification, each of which calls for a different standard of scrutiny. The appropriate standard of review is determined by examining the nature of the classification and the rights thereby affected.

In the first type of case, where the classification relates to who may exercise a fundamental right or is based upon a suspect trait such as race or national origin, strict scrutiny is required. When strict scrutiny is employed, a classification will be invalid unless it is found to be necessary to the achievement of a compelling state interest.

The second type of case involves a classification which, although not suspect, is either sensitive or important but not fundamental. Such a classification must serve an important governmental interest and be substantially related to the achievement of that objective.

The third type of situation involves classifications which are neither suspect nor sensitive or rights which are neither fundamental nor important. Such classifications will be valid as long as they are

---

3. Aunt was "raised in Japan and [] came to the United States around 1979 when she was about 18 years old." Findings of Fact and Conclusions of Law, 4/11/12 ("Findings and Conclusions"), ¶ 41, at 8. Aunt did not specifically assert an equal protection claim in her Rule 1925(b) statement. Accordingly, the trial court had no opportunity to address that aspect of Aunt's argument in confronting her more generalized complaint that "the trial court abused its discretion and committed reversible error by drawing improper and unfounded inferences from [Aunt's] nationality and perceived communication barriers and potential educational setbacks resulting therefrom." *See* Aunt's Rule 1925(b) Statement of Errors Complained of on Appeal. Nonetheless, the basis for Aunt's equal protection claim, *i.e.*, that the trial court drew an improper inference based upon her nationality, was apparent from the trial court's on-the-record recital of the reasons for its decision pursuant to 23 Pa.C.S. § 5323(d). *See N.T.*, 10/24/11, at 23. Accordingly, and because Aunt's constitutional argument is discernible from the general assertions that she actually made in her Rule 1925(b) statement, we decline to find that it is waived.

rationally related to a legitimate governmental interest.

*In re A.C.,* 991 A.2d 884, 891 (Pa.Super.2010) (quoting *Commonwealth v. Hilliar,* 943 A.2d 984, 996 (Pa.Super.2008)).

 Aunt argues that strict scrutiny is warranted because the classification involved the fundamental right of parenting and was based upon her nationality, a suspect trait. Aunt further argues that, absent a compelling governmental interest, the trial court's alleged discrimination against non-English speaking parents under the custody law is invalid. Upon close review, we find these arguments unpersuasive.

First, contrary to the premise underlying Aunt's equal protection claim, Aunt's rights to G.B. and K.B. are not analogous to a parent's fundamental right to his or her children. Aunt is not a parent. She has never been adjudicated *in loco parentis* in this case. She is a legal guardian pursuant to 42 Pa.C.S. § 6357, under which Birth Parents expressly retain certain rights and duties to their children. As a matter of law, Aunt cannot assume a right to custody that exceeds the rights and limitations set forth in the Juvenile Act. *Id.* ("An award of [permanent] legal custody shall be subject to the conditions and limitations of the order and to the remaining rights and duties of the parents. . . ."). As Aunt's custodial rights are controlled by statute, she does not enjoy a fundamental right to exercise primary custody of the children.

 Furthermore, even assuming, *arguendo,* that Aunt sought to exercise a fundamental right, and that her nationality and her inability to communicate proficiently in English placed her in a suspect class of individuals for purposes of equal protection analysis, the trial court did not classify English-speaking individuals differently from non-English-speaking individuals, nor did it consider Aunt's impaired communication skills as a dispositive factor in awarding custody. In weighing the children's best interests, and along with all of the other relevant factors, the trial court practically and realistically considered the potential detrimental effects that Aunt's communication impediment could have upon G.B. and K.B., particularly within the developed context of K.B.'s autism and developmental behavior issues. Findings and Conclusions, at 29–30. Because the trial court did not treat Aunt unfairly based upon the assertedly suspect class of her nationality or her inability to communicate in English proficiently, no relief is due.

In confronting the merits of the issues that Aunt presented in her Rule 1925(b) statement, the trial court issued exhaustive findings of fact, wherein it addressed all of the statutory factors delineated in § 5328(a). As it relates to the final, catch-all consideration identified in § 5328(a)(16), the court reasoned as follows:

Other relevant factors considered by the Court in awarding primary physical custody to [Uncle] was the language barrier, the preference expressed by the biological parents and the non-blood relationship between [Aunt] and the subject minor children. Throughout the numerous hearings held by the Court, it was apparent that [Aunt] had difficulty communicating not only to the Court but also with other individuals because of her inability to fully read and write and comprehend the English language. Her English speaking skills were functional at best but were with a heavy accent which at times was not understandable. Her lack of language skills in English, which is the native tongue of the subject children and [Uncle], as well as all other adult individuals involved in

the care of the minor children, is a hurdle difficult for her to overcome. Even [the court-appointed expert,] Dr. Lunnen had difficulty in his controlled environment in communicating effectively in testing [Aunt]. While this language barrier was not a big factor in the Court's decision, it was a concern particularly where an autistic child is involved.

The Court also took into consideration as a minor factor that the children were blood relatives of [Uncle] and were only related to and came into physical custody of [Aunt] because of her marriage to [Uncle]. It only seems appropriate that a blood relative be chosen as the primary physical custodian over a non-blood relative where the blood relative has been as involved or more involved as a primary caretaker of minor children. Naturally, it must still be in the best interests of the minor children before an award of primary physical custody be made even to a blood relative.

Finally, the biological parents testified [unequivocally] and clearly that they believed that it was most appropriate that [Uncle] have primary physical custody of their two minor children. This is consistent with their belief that [Aunt] was not as interested in the overall well-being of the children as [Uncle].

Thus, for all of the reasons set forth above, it is clear to the Court that it is in the best interests of the minor children that primary physical custody be awarded to their uncle ... subject to periods of partial physical custody in [Aunt].

Findings and Conclusions, at 29–30.

The trial court considered Uncle's biological kinship with G.B.'s and K.B.'s birth father, and the effect of the language barrier between Aunt and the children, along with all of the other relevant factors listed in section 5328. Aunt's assertions notwithstanding, we cannot conclude from the certified record that either of the two considerations complained of was a dispositive factor in the trial court's best-interests analysis, particularly in light of the comprehensive thirty-page findings of fact and conclusions of law that the trial court provided in support of its determination and in conjunction with its separate and contemporaneously filed opinion. Aunt's contentions that the trial court employed impermissible presumptions in Uncle's favor based upon his genetics or upon her nationality are unavailing. We discern no abuse of discretion by the trial court.

Order affirmed. Jurisdiction relinquished.

BOWES, J. files a Concurring & Dissenting Opinion.

CONCURRING AND DISSENTING OPINION BY BOWES, J.:

I join the learned majority's analysis addressing the merits of Aunt's claims, and I concur with its decision to affirm the custody order in favor of Uncle. However, for the reasons discussed herein, I respectfully dissent from the portion of the majority opinion that fashions a non-existent statutory mandate for a trial court to set forth its consideration of the sixteen best-interest factors concomitant with the custody decision. To the extent that a timing requirement exists relating to 23 Pa.C.S. § 5328(a), it is already embedded in our decisional law.

As highlighted by our recent discussion in *M.J.M. v. M.L.G.,* 2013 PA Super 40, 63 A.3d 331, this Court's prior interpretations of the Child Custody Law confirms that the prevailing best practice among trial courts when entering a custody order is to concurrently delineate the reasons for their custody decisions pursuant 23 Pa.C.S.

§ 5323(d) [1] and convey their consideration of the sixteen best-interest factors pursuant to 23 Pa.C.S. § 5328(a) [2]. While I do not challenge the status of our decisional law, I cannot join the learned majority's analysis in the instant case for three reasons. First, the majority's construction of the Child Custody Law in the instant case is *obiter dictum* that has no bearing on its disposition. Second, as exemplified by the case at bar, the timing aspect of the majority's proposed rulemaking is unenforceable. Finally, and from my perspective most importantly, the majority's analysis conflates the pertinent features of 23 Pa.C.S. §§ 5323(d) and 5328(a) and employs their operative terms interchangeably in order to garner support for the proposed statutory mandate that does not otherwise exist. I address these misgivings *seriatim.*

First and foremost, the majority's rulemaking is *obiter dictum.* Black's Law Dictionary defines *obiter dictum* as, "A judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)." BLACK'S LAW DICTIONARY 1100 (7th ed.1999). Herein, despite the fact that Aunt never invoked § 5323(d) as a basis to reverse the trial court, the majority's self-styled holding espouses that "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen factors prior to the deadline by which a litigant must file a notice of appeal." Majority Opinion at 955. The foregoing statement is inaccurate in that the statute contains no such mandate. Moreover, it is properly classified as *dictum* because it was not essential to the majority's decision and does not affect the outcome of the case, particularly since the majority found, "Aunt has not demonstrated that any of her issues were forfeited by virtue of the trial court's approach in this case ..." *Id.* at 955. As the majority's analysis is not decisional, it is not binding. *Stellwagon v. Pyle,* 390 Pa. 17, 133 A.2d 819 (1957) (language that goes beyond issue to be decided is considered *dictum* ).

As the majority frankly acknowledges, this Court is not the appropriate body to create procedural rules. The Pennsylvania Constitution specifically confers the authority on our Supreme Court to promulgate rules governing the practice, procedure, and conduct of all of the courts in the Commonwealth. Pa. Const. art. V § 10(c) [3]; *see also Commonwealth v.*

1. Section 5323 provides, in pertinent part, as follows:

 (a) **Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
 (1) Shared physical custody.
 (2) Primary physical custody.
 (3) Partial physical custody.
 (4) Sole physical custody.
 (5) Supervised physical custody.
 (6) Shared legal custody.
 (7) Sole legal custody.
 . . . .
 (d) **Reasons for award.**—The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order.

2. In pertinent part, 23 Pa.C.S. § 5328(a) provides, "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child[.]"

3. The Pennsylvania Constitution, Article V § 10(c) provides as follows:

 (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide

**960**

*McMullen,* 599 Pa. 435, 961 A.2d 842, 847 (2008) ("T[he] [Supreme] Court retains exclusive rule-making authority to establish rules of procedure.") and *Commonwealth v. Pitts,* 603 Pa. 1, 981 A.2d 875 (2009) (admonishing Superior Court for crafting additional *Turner/Finley* requirements in *Commonwealth v. Friend,* 896 A.2d 607, 612 (Pa.Super.2006)); *Commonwealth v. Liston,* 602 Pa. 10, 977 A.2d 1089, 1093–1094 (2009) ("Before a mandatory rule of procedure affecting an untold number of cases is issued [by the Superior Court], it should be studied and approved by one of our procedural rules committees, and then considered by [the Supreme] Court"). Thus, it is beyond our power, as an error-correcting court to fashion procedural rules for custody courts.

Moreover, the timing aspect of the majority's dictate is conceptually unenforceable. For instance, the appropriate remedy to correct the trial court's failure to comply with our existing decisional law would be to remand the matter in order for the trial court to issue an opinion specifically addressing all of the enumerated factors. What, however, would be the appropriate remedy if a trial court fails to explain its thought process as to the sixteen best-interest factors before a party files its notice of appeal but, as in this case, later complies? The order merely should be affirmed or reversed on the merits. As the court eventually proffered its rationale, vacating the custody order and remanding the matter for this procedural misstep would be a futile waste of judicial resources if the order is appropriate. Reversing the underlying custody order

would be draconian. It is adverse to the basic tenets underlying custody law to reverse a custody order that is undoubtedly entered in the child's best interest simply because the trial court declined to elucidate the sixteen custody factors in a contemporaneously filed writing or an opinion issued prior to the filing of a notice of appeal. This Court's current practice, as enforced by its internal rules, is to expedite matters. These rules promote the child's best interest. The majority's pronouncement may unnecessarily delay these matters. Such a consequence would be particularly excessive where, as here, the trial court articulated the basis for its decision on the record pursuant to § 5323(d), confirmed that it considered all of the relevant statutory factors prior to entering the custody order, and subsequently set forth a specific § 5328(a) analysis in its Rule 1925(a) Opinion.

When a trial court has failed to offer any rationale pursuant to § 5328(a), this Court has traditionally selected remand over reversal when fashioning a corrective measure. *See E.D. v. M.P.,* 33 A.3d 73, 82 (Pa.Super.2011); *C.R.F., III v. S.E.F.,* 45 A.3d 441 (Pa.Super.2012) ("remand for the trial court to render a decision applying [the relocation factors] of Section 5337(h) of the Act."). *Cf. J.R.M. v. J.E.A.,* 33 A.3d 647 (Pa.Super.2011) (vacating custody order and remanding for further proceedings because court required additional fact-finding). Accordingly, where the trial court actually presents a rationale for drafting a custody order that it believes achieves a child's best interest, reversing the custody order would not only be too severe of a

for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent

with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. . . .

sanction for the jurist's putative misstep, it would run contrary to the child's best interest, the polestar of all child custody proceedings.

Finally, as it relates to the majority's substantive rationale, the crux of my dissent is that the majority conflates the relevant aspects of § 5323(d) and § 5328(a). Notwithstanding the majority's characterization of a statutory mandate requiring a trial court to outline its best-interest determination prior to the filing of a notice of appeal, the Child Custody Law does not require that a trial court present its § 5328(a) rationale on the record during a custody proceeding or in the custody order. Indeed, § 5328(a) does not mandate a trial court to delineate or explain anything. It simply provides that the trial court **consider** the sixteen factors listed in § 5328(a) in order to determine the child's best interest.[4] In reality, this Court created, in *E.D. v. M.P.*, 33 A.3d 73, 82 (Pa.Super.2011), the requirement that a trial court express its consideration of the best-interest factors as a means to facilitate our appellate review of a custody decision. The basis of our reasoning in that case was that the trial court failed to apply § 5337(h) and § 5328(a) and the trial court's cursory analysis of the child's best interest impeded appellate review. Specifically, we stated, "Effective appellate review requires the trial court to consider each of the factors set forth in [the applicable sections of the custody statute] and to state both its reasoning and conclusions on the record for our review." *Id.* at 81. We subsequently refined that dictate in *J.R.M. v. J.E.A.*, 33 A.3d 647 (Pa.Super.2011) and *C.R.F., III v. S.E.F.*, 45 A.3d 441 (Pa.Super.2012), to extend the requirement to all of the best-interest and relocation factors. We ultimately concluded, "*All* of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. supra* at 654 (emphasis in original). Thus, to be clear, the requirement that a trial court address its consideration of the sixteen best-interest factors on the record to assist appellate review is unquestionably not a statutory mandate.

Having discussed the § 5328(a) requirement that a trial court consider the statutory best-interest factors in determining a child's best interest and our case law requiring courts to express their considerations in order to assist our appellate review, I now turn to the salient case addressing the distinct statutory requirement that a trial court delineate the reasons for its custody determination. In *M.P. v. M.P.*, 54 A.3d 950 (Pa.Super.2012), this Court concluded that the

---

4. The majority's overreaching is highlighted by its statement that the statutory language "does not identify the point in the proceedings at which [the] consideration must occur." Majority Opinion at 951. As a logical necessity, however, the mandated consideration of factors to determine the best interest of a child must occur prior to the trial court's custody determination or else that determination would be baseless. The majority's statement is more accurately phrased as the statute does not indicate when during the proceedings the trial court must express its rationale as it relates to all sixteen factors. Undoubtedly, the reason for this omission is that the presumed mandate does not exist in the statutory language. It is a creation of our case law.

Additionally, I observe that in order to facilitate appellate review in situations where the trial court failed to demonstrate that it considered the relevant statutory factors at all, our decisional law fashioned the § 5328(a) requirement that a trial court consider the sixteen best-interest factors in deciding any form of custody into a requirement that the court explain its best-interest considerations. Although the requirement to consider something is different conceptually from the requirement to explain it, as I previously noted, I do not challenge the state of our existing case law.

trial court erred in issuing a custody order without any explanation pursuant to § 5323(d) until after the appeal was filed. Unlike the focus of our case law confronting the court's compliance with § 5328(a), which addressed this Court's inability to perform effective appellate review without the trial court's discussion of its best-interest considerations, the *M.P.* Court reasoned that the trial court's failure to comply with § 5323(d) in that case precluded the appellant from challenging the trial court's independent post-hearing Internet investigation and consideration of evidence *dehors* the record. Hence, the precise basis of our decision to reverse the custody order was that the timing of the trial court's § 5323(d) rationale prevented the mother from addressing the court's extrajudicial investigation following the hearing. It bears repeating that the trial court herein complied with § 5323(d) by placing the precise reasons for its determination on the record during the custody proceedings. Thus, unlike the trial court in *M.P.*, the court herein did not surprise Aunt with a new rationale after she filed her appeal.

As noted *supra,* the majority claims to fix the perceived error that "[s]ection 5323(d) does not contemplate a specific time period for compliance with section 5328." Majority Opinion at 951–52. Overlooking the fact discussed above that the General Assembly has never required a trial court to express its best-interest considerations, the majority intertwines the § 5323(d) requirement to delineate the reasons for its determination with our case law addressing § 5328(a). Throughout its rationale, the majority refers interchangeably to the General Assembly's mandate to "delineate the reasons" and a nonexistent statutory mandate to "address the statutory factors." *See* Majority Opinion at 951–52, 952–53, 953, 954, 955. Indeed, having

found that § 5323(d) effectively subsumed § 5328(a), the majority reasons,

> To interpret section 5323(d) so as to permit a trial court to forego addressing the factors until it issues its Pa.R.A.P. 1925(a) opinion-*i.e.,* after a party has filed an appeal and a concise statement-renders that section's language mere surplusage. Under such an interpretation, if a party decides not to appeal the custody order, and the trial court does not address the factors contemporaneously with the custody order, the court may never address the factors. However, the Act's language requiring the trial court to do so is clear and unequivocal. *See* 23 Pa.C.S. §§ 5328 ("[T]he court *shall* determine the best interest of the child by considering all relevant factors …") (emphasis added); 5323(d) (The court "*shall* then [sic] delineate the reasons for its decision on the record in open court or in a written opinion or order.") (emphasis added). Such an interpretation would all but guarantee that, in many cases, compliance with the Act would never occur. This result clearly is not what the General Assembly intended in promulgating the new Act, because it would render the mandatory language in section 5328 and section 5323 meaningless.

Majority Opinion at 952–53. Later, the majority opined that "Interpreting section 5323(d) in a manner that permits a trial court to delay addressing the Act's sixteen custody factors until the preparation of its Pa.R.A.P. 1925(a) opinion yields an absurd and unreasonable result." *Id.* at 953.

These two excerpts reveal the recurring flaw that permeates the majority's rationale, *i.e.,* its refusal to acknowledge that the legislature **did not** require a trial court to explain its best-interest considerations; rather, we did. Thus, notwithstanding the majority's protestations to the contrary,

applying the pertinent sections of the law as drafted does not create surplus nor meaningless language. Indeed, these aspects of the Child Custody Law truly are clear and unequivocal. Pursuant to § 5328(a), trial courts are required to consider the sixteen enumerated factors in determining a child's best interest. As I noted *supra*, the actual consideration of the factors logically must occur prior to the custody determination or the determination could not be founded on the child's best interest. Likewise, under § 5323(d), the trial court must delineate the reasons for its determination in one of the three identified manners. Although this Court subsequently required trial courts to explain the best-interest considerations in order to assist our appellate review, I believe it is error to graft our decisional law onto the General Assembly's intent in order to achieve a desired outcome.[5]

As previously noted, in *M.P. v. M.P., supra,* this Court determined that the trial court must delineate the reasons for its decision prior to the filing of a notice of appeal. *See also, M.J.M. v. M.L.G., supra* at 951. In the case at bar, the trial court elected to delineate the reasons for its decision on the record in open court. The trial court articulated on the record the following reasons for granting Uncle primary custody of G.B. and K.B.:

> Two of the key factors for me is one is the blood relationship, and two is I don't believe Lawrence County would have been looking to the family absent that kinship relationship. But once it did, of course, that kicked in the right of [Aunt], because of her years of helping to take care of the kids, it kicked in custody rights in her. I also think that the language barrier has some play in it as a difficulty, as well as all of the other factors and information that we have received over three or four days of hearings.

N.T., 10/24/11, at 23.

Unlike the majority, I do not equate the § 5323(d) requirement that the trial court delineate the reasons for its decision with the § 5328(a) requirement that it consider the sixteen enumerated factors in § 5328 prior to awarding custody. Although the reasons for a trial court's custody decision undoubtedly will often overlap with its consideration of the sixteen best-interest factors, that scenario is not a certainty in every case. Indeed, the case at bar highlights the differences between the two sections. Herein, the trial court both noted its contemplation of all of the relevant factors and delineated on the record its specific reasons for fashioning the custody award in Uncle's favor. Mindful that the two sections are distinct, albeit related provisions, rather than a single, interchangeable directive, I would not negate the trial court's compliance with § 5323(d) simply because its discussion did not explain contemporaneously its consideration of all of the § 5328(a) best-interest factors pursuant to our decisional law. Accordingly, I would find that the trial court complied with the statutory mandate to delineate the reasons for its determination pursuant to 5323(d) and to the extent that it failed to comply with the timing elements of our case law, the error was harmless. The court remedied any prejudice by specifically discussing each of the factors in its subsequent Rule 1925(a) opinion, and Aunt was able to address the court's discussion on appeal.

---

5. I note that we did examine the legislative intent in *E.D. v. M.P.,* 33 A.3d 73, 82 (Pa.Super.2011), in order to determine whether the the new custody law applied; however, we did not purport to engage in statutory construction when we required trial courts to set forth an expression of rationale relating to the best-interest factors. *See id.* at 81.

Moreover, to the extent that Aunt complains in this case that the trial court's application of § 5328(a) precluded her from making an informed decision to appeal the custody order, I reject that assertion. Simply stated, Aunt knew the basis of the trial court's rationale, even if she was not aware of the specific manner in which the trial court applied the sixteen factors. Consequently, she had sufficient information to decide whether to pursue an appeal, and, in fact, leveled a portion of her appellate argument against the trial court's on-the-record statement of its rationale, *i.e.*, the perceived communication barriers and Uncle's birth relationship with the children's father. Thus, despite contrary assertions, Aunt was not forced to guess the basis of the trial court's decision.

Likewise, the majority's concern over the potential for waiver of an appellate argument due to a lack of particularity or non-inclusion in a Rule 1925(b) statement is unpersuasive. While the majority accurately cited our case law that stands for the established proposition that issues not included in a timely filed Rule 1925(b) statement are waived pursuant to Pa. R.A.P. 1925(b)(4)(vii), it ignored without any discussion the corresponding rule that in civil cases an appellant may state his or her issues in general terms if it "cannot readily discern the basis for the [trial] judge's decision," and "the generality of the Statement will not be grounds for finding waiver." *See* Pa.R.A.P. 1925(b)(4)(vi). Similarly, the majority does not attempt to explain how our ability to remand a case for a party to amend or supplement a timely filed Rule 1925(b) statement pursuant to Pa.R.A.P. 1925(c) impacts its concern over a party's inability to present an issue in the Rule 1925(b) statement.

In addition, in appeals designated as children's fast track, the trial court seldom orders litigants to file a Rule 1925(b) statement because Rule 1925(a)(2)(i) requires the statement to be filed concurrent with the notice of appeal. Pursuant to our holding in *In re K.T.E.L.*, 983 A.2d 745, 747 (Pa.Super.2009), this Court may overlook a party's failure to comply with Rule 1925(a)(2)(i) when no court order has been violated. *See In re R.N.F.*, 52 A.3d 361, 362–363 (Pa.Super.2012) (citing *K.T.E.L., supra* ("... an appellant's failure to strictly comply with Pa.R.A.P. 1925(a)(2) did not warrant an application of the waiver rule, as no court order had been violated, and there was no prejudice to any party.")). Accordingly, I believe sufficient safeguards exist within our case law and rules of appellate procedure to prevent the harsh hypothetical scenarios the majority devised to illustrate its alarm.

Furthermore, even though I am not convinced that the episodic nature of custody matters would have any bearing upon the perceived legislative mandate to confront the sixteen best-interest factors prior to the filing of a notice of appeal, I will address this aspect of the majority's rationale also. Simply stated, the divisibility of § 5323(d) and § 5328(a) does not affect the trial court's obligation to delineate the reasons for its determination. The court's compliance with § 5323(d) is in no way dependent on the filing of the appeal. The trial court must always delineate its reasons for its custody decision, and the reasons will certainly reference some, if not all, of the statutory factors. Thus, whether or not an appeal is filed, the litigants would know the reasons for the custody order. Hence, I would reject the majority's premise that the continuous nature of custody proceedings has a bearing on our statutory interpretation of §§ 5323(d) and 5328(a).

For all of the foregoing reasons, I cannot join the majority's analysis that

purports to identify a statutory mandate requiring trial courts to explain its consideration of all sixteen best-interest factors as a component of § 5323(d).