J-S61013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.J.F. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| L. AND C. (W.) K. | |
| Appellees | No. 1923 WDA 2015 |

Appeal from the Order November 18, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD No. 13-003356

BEFORE:  PANELLA, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.                **FILED SEPTEMBER 20, 2016**

R.J.F. ("Father") appeals from the order entered November 18, 2015, in the Court of Common Pleas of Allegheny County, which denied Father's request for telephonic and video communication with his minor child, C.F. (the "Child"). Father murdered his wife, Child's mother. He is serving a sentence of life without the possibility of parole. We affirm.

The trial court summarized the relevant facts and procedural history as follows.

> On November 7, 2014, [Father] was convicted of first-degree murder in the 2013 poisoning death of [A.K.], his wife and the mother of [the Child]. [Father] was sentenced to life imprisonment without the possibility of parole on February 4, 2015. He is presently imprisoned in Clearfield County, Pennsylvania.
>
> [The Child] was six years old when [Father] murdered her mother. She was placed into her maternal grandparents'

custody. In April 2014, prior to his conviction, [Father] and the [g]randparents, through counsel, arrived at a Consent Order which permitted [Father] to write letters to the Child. The Order required his letters to be submitted to the Child's therapist for review to ensure appropriateness for delivery to the Child. No other form of contact was permitted.

After conviction, [Father] petitioned for telephone and video contact with Child. After argument and briefing, that petition was denied on November 18, 2015.

Trial Court Memorandum, 2/19/16, at 2-3. This timely appeal followed.

Father raises eight issues on appeal. Specifically, Father alleges that:

1) The [t]rial [c]ourt erred in applying 23 Pa.C.S.A. § 5329, a statute which only addresses custody, not communication between parent and child.

2) The [t]rial [c]ourt erred in interpreting 23 Pa.C.S.A. § 5329 in a manner which produces a de facto termination of Father's parental rights without the accompanying due process required of a termination proceeding.

3) The [t]rial [c]ourt interpreted 23 Pa.C.S.A. § 5329 in a manner that treats one class of incarcerated parents differently tha[n] all others without a rational reason for doing so.

4) The [t]rial [c]ourt's interpretation of 23 Pa.C.S.A. § 5329 allows an improper disregard for an analysis [of] the child's best interest.

5) The [t]rial [c]ourt improperly ignored the child's own wishes.

6) The [t]rial [c]ourt improperly ignored the law's preference that children have the opportunity to visit and contact non-custodial parents.

7) No valid penological [sic] concerns preclude the relief requested.

8) The [t]rial [c]ourt's decision sets Father up for having his parental rights terminated.

Appellant's Brief, at 5-26.

As a preliminary matter, we must address Appellees' ("Maternal Grandparents") request, filed via a "Petition for Dismissal of Appeal,"[1] to dismiss Father's appeal due to the untimely filing of his appellate brief, as well as Maternal Grandparents' "Petition for Dismissal of Claims," requesting the dismissal of Father's constitutional claims based upon his failure to notify the Pennsylvania Attorney General.

Father sought an extension of time in which to file his appellate brief, which this Court granted on April 13, 2016. The order mandated that Father file the brief by April 20, 2016, warning "**NO FURTHER EXTENSIONS OF TIME SHALL BE GRANTED**, and this appeal shall be subject to immediate dismissal by this Court without further notice to the parties if appellant's brief is not filed by the newly established due date." Order, 4/13/16. Father, through his counsel, Wendy Lynne Williams, Esquire, filed the brief late on April 28.

In their appellate brief, Maternal Grandparents assert that Father's appeal should be dismissed as the late filing of his appellate brief denigrates the integrity of the judicial system. "If an appellant fails to file his … brief … within the time prescribed by these rules, or within the time as extended, an

---

[1] A motions panel of this Court entered an order denying this motion without prejudice to raise the matter before the merits panel. **See** Order, filed 6/6/16.

appellee may move for dismissal of the matter." Pa.R.A.P. 2188. Maternal Grandparents, however, fail to allege prejudice, other than prejudice caused by delay. The delay was just eight days. And addressing the appeal on the merits does not count as prejudice. *See Stewart v. Stewart*, 743 A.2d 955, 956 n.4 (Pa. Super. 1999). Therefore, we decline to dismiss this appeal. We do, however, condemn Attorney Wiliams's tardy filing of the brief.

In their "Petition for Dismissal of Claims," Maternal Grandparents also argue that Father's failure to notify the Pennsylvania Attorney General of his constitutional challenges to a statute, as mandated by Pa.R.C.P. 235 and Pa.R.A.P. 521, must result in the dismissal of Father's constitutional claims. *See* Pa.R.C.P. 235 (requiring party who raises constitutional challenges to any existing law to provide written notice and appropriate service to Pennsylvania Attorney General); Pa.R.A.P. 521 (requiring appellant to provide written notice and appropriate service to Pennsylvania Attorney General if appellant raises constitutional challenges to a statute on appeal). An appellant's failure to follow proper notification procedures results in the waiver of all constitutional challenges. *See Hill v. Divecchio*, 625 A.2d 642, 648-49 (Pa. Super. 1993). Father admits that he did not notify the Pennsylvania Attorney General pursuant to Rules 235 and 521, but asserts that he did not mount facial challenges to the constitutionality of the statute and was therefore not required to notify the Pennsylvania Attorney General.

Father is correct that only facial challenges to the constitutionality of a statute automatically require notice to the Pennsylvania Attorney General. The crux of Father's argument hinges on the fact that the trial court's application of 23 Pa.C.S.A. § 5329 differentiates between classes of incarcerated parents. *See* Appellant's Brief, at 13. However, it is clear that the entire purpose of the statute *itself* is to differentiate between parents convicted of murders, *see* § 5329(b), and other criminal parents, *see id*., at (a). As the *statute* makes this distinction, Father's challenge is clearly, in actuality, a facial challenge, which required notification under Rules 235 and 521. *See Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011) ("A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case.") Therefore, we are constrained to find Father's constitutional challenge to the differentiation between criminal parents under § 5329 waived on appeal. *See Hill*, 625 A.2d at 649. Thus, we grant, in part, Maternal Grandparents' "Petition for Dismissal of Claims."[2]

Next, we must determine whether Father has otherwise preserved the remaining seven issues for our review. Our review of the record indicates

---

[2] Maternal Grandparents' "Petition for Dismissal of Claims" seeks to dismiss two of Father's constitutional claims. However, as discussed below, we find Father's second constitutional claim, that the trial court's actions resulted in a *de facto* termination of his parental rights without the requisite due process of law, waived due to Father's failure to raise the issue in his Rule 1925(b) statement. Therefore, we do not address that issue here.

that Father has waived the right to raise alleged errors two, five, six, and eight on appeal by failing to include these challenges in his Rule 1925(b) statement. Any issues not raised in a Rule 1925(b) statement will be waived for purposes of appeal. ***See Commonwealth v. Castillo***, 888 A.2d 775, 780 (Pa. 2005) ("Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived.").

Here, Father provided a Rule 1925(b) statement to the trial court containing six alleged errors. However, we are unable to construe any of the alleged errors in his Rule 1925(b) statement as claims that the trial court's order constituted a *de facto* termination of parental rights, improperly ignored the child's own wishes, ignored the law's preference for non-custodial parents to receive visitation, or biases Father towards having his parental rights terminated. Therefore, we conclude that Father waived issues two, five, six, and eight.

Turning to the first of Father's three remaining issues on appeal, Father challenges the trial court's application of § 5329 to Father's request for video or telephone communication with the Child. Father contends that § 5329 does not apply to his request for video or telephone contact with the Child, because that type of communication is not considered "custody." Essentially, Father's challenge is one of statutory interpretation.

"Issues of statutory interpretation are questions of law where the appellate standard of review is *de novo* and the appellate scope of review is

plenary." ***C.B. v. J.B.***, 65 A.3d 946, 951 (Pa. Super. 2013) (citations omitted).

> The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to their common and approved usage. We must also construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.
>
> Under Section 1921(c), the court resorts to consideration of 'purpose' and 'object' of the legislature when the words of a statute are not explicit. . . . Finally, it is presumed that the legislature did not intend an absurd or unreasonable result. In this regard, we. . . . are permitted to examine the practical consideration of a particular interpretation.

***Id***. (citations omitted).

> Here, the statute at issue provides:
>
> (b) **Parent convicted of murder**. – No court shall award custody, partial custody or supervised physical custody to a parent who has been convicted of murder under 18 Pa.C.S. §2502(a) (relating to murder) of the other parent of the child who is the subject of the order unless the child is of suitable age and consents to the order.

23 Pa.C.S.A. § 5329(a). The plain language of the statute provides that a parent who has been convicted of murder of the other parent is prohibited from retaining "custody," "partial custody," or "supervised physical custody," of the child at issue. Section 5323 of the Child Custody Act provides that the *only* forms of custody that can be awarded to a party include shared physical

- 7 -

custody, primary physical custody, partial physical custody, sole physical custody, supervised physical custody, shared legal custody, and sole legal custody. *See* 23 Pa.C.S.A. § 5323(a)(1)-(7). "Legal Custody" is defined as the "right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions." 23 Pa.C.S.A. § 5322. "Physical Custody" is defined as the "actual physical possession and control of a child." *Id.*

While the statute and related statutory provisions do not specifically enumerate telephone or video communication as a form of custody, we find that reading the statute otherwise would lead to an absurd result. Through the provisions of the Child Custody Act, it is clear that there are only two types of "control" over a child, through physical and legal custody. Practically, if neither physical nor legal custody included the right to telephone communication with a child, the Child Custody Act would leave open the possibility that parties without legal standing as defined in the Child Custody Act could gain access to a child through telephone communication. We do not believe that the legislature intended to leave this type of loophole in the Child Custody Act. In order for all of the provisions of the Child Custody Act to be effective, we must find that telephone communication is included as either legal or physical custody. Therefore, because we find that telephone communication is subsumed by the larger definition of custody, Father's argument that the trial court erred by applying

§ 5329 because telephone communication does not constitute custody must fail.

Father's final two arguments focus on the trial court's failure to consider the best interests of the child and to consider that there were no valid prison related concerns before denying Father's request for telephone communication. However, the language of § 5329 provides that it is *mandatory* for a trial court to restrict custody in the situation where one parent has been convicted of murdering the other parent. A trial court does not have the discretion to consider the best interests of the child or any other factors that a party may believe to be important under the circumstances. Father does not dispute that he was convicted of murdering the Child's mother. Therefore, under § 5329, the trial court was required to deny Father custody of the Child, through telephone communication, without conducting a hearing to determine the best interests of the Child or if there were any valid prison related concerns. Consequently, Father's final two arguments on appeal are meritless.

Order affirmed. Petition to Dismiss Claims granted in part and dismissed as moot in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/20/2016