J-A03024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.A.S., A/K/A C.A.R., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| G.N.S., JR., | |
| Appellee | 1323 MDA 2014 |

Appeal from the Order entered July 21, 2014,
in the Court of Common Pleas of Perry County,
Civil Division, at No: FC-2007-139

BEFORE: MUNDY, STABILE, and FITZGERALD*, JJ.

MEMORANDUM BY STABILE, J.: **FILED APRIL 13, 2015**

C.A.S. a/k/a C.A.R. (Mother) appeals from the order entered July 21, 2014, in the Court of Common Pleas of Perry County, which awarded primary physical custody of her four minor children to their father, G.N.S., Jr. (Father), during the school year, awarded Mother partial physical custody during the school year, awarded both parents shared physical custody during the summer, and awarded both parents shared legal custody throughout the year. After careful review, we vacate and remand for further proceedings consistent with this memorandum.

The four children at issue in this appeal are G.L.S., a male born in February of 2001; L.M.S., a male born in October of 2003; E.G.S., a female born in February of 2005; and C.J.S., a male born in March of 2007

_____

* Former Justice specially assigned to the Superior Court.

(collectively, the Children). The Children were born during the marriage of Mother and Father. Mother and Father separated not long after the birth of C.J.S., in April of 2007, and a divorce decree was entered in March of 2010. Following their separation, Mother and Father exercised shared legal custody of the Children. During the school year, Mother exercised primary physical custody, with Father having periods of partial physical custody. During the summer months, Mother and Father also exercised shared physical custody.

In 2010, Mother married C.R. (Stepfather) in Maryland. On May 28, 2010, Mother filed a petition to relocate to Maryland with Stepfather and the Children. A relocation hearing was held on August 12, 2010. During the hearing, Stepfather testified, *inter alia*, that he was born in Naples, Italy, and that he and his siblings were the beneficiaries of a trust worth approximately one billion euros. N.T., 8/12/10, at 133-34, 139, 144-49. Mother's petition to relocate was denied by order entered August 23, 2010.

On June 25, 2013, Father filed a petition for special relief, in which he requested sole legal and physical custody of the Children. In his petition, Father alleged that Stepfather's claim of being born in Italy was a falsehood, that Stepfather was actually a woman named S.R., and that Stepfather's marriage to Mother was "null and void" because same-sex marriage was not permissible in Maryland in 2010. Based on these allegations, an interim order was entered on June 26, 2013, awarding Father physical custody of the Children, and prohibiting Stepfather from having contact with Children.

A hearing was held on August 21, 2013, during which Mother conceded that Stepfather was not born in Italy, and that he was not the beneficiary of a large trust. N.T., 8/21/2013, at 151. Mother also indicated that Stepfather underwent gender reassignment surgery prior to the time they met, and that Stepfather's name was legally changed from S.R. to C.R. in 2010. *Id.* at 109, 142, 153-55, 159. On August 23, 2013, an interim order was entered awarding Mother periods of unsupervised visitation with the Children on Sunday afternoons from 1:00 p.m. to 7:00 p.m., during which Stepfather was not permitted to be present. On September 10, 2013, an order was entered directing that a custody evaluation be performed.

A two-day custody trial was held on June 2, 2014, and June 4, 2014, during which the trial court heard the testimony of Dr. Arnold Shienvold, who performed the court-ordered custody evaluation; Father's mother; Father; Father's wife, K.S. (Stepmother); Mother, who was called by Father's counsel as on cross-examination; and the wife of Mother's uncle, B.W.[1] By this time, Stepfather had been charged with perjury as a result of his testimony at the 2010 relocation hearing. He was not present at the custody trial and did not testify. At the conclusion of the trial, the court made a temporary ruling awarding Mother expanded periods of partial

---

[1] The Honorable Richard N. Saxton presided over the custody trial. The case initially was set to be heard by the Honorable Kenneth A. Mummah. However, on April 17, 2014, Mother filed a motion requesting that Judge Mummah recuse himself. Judge Mummah granted this motion on April 24, 2014.

physical custody. N.T., 6/4/14, at 100-01. The court also ordered that Stepfather could resume contact with the Children. *Id.* at 101.

On July 1, 2014, Mother filed a petition for special relief and/or contempt, in which she alleged that Father took the Children to be interviewed by Perry County Children and Youth Services, in violation of a verbal order that all concerns about the opposing parent be directed to the Children's guardian *ad litem*. Father filed a response on July 7, 2014, in which he alleged that the Children had reported inappropriate behavior by Mother and Stepfather during a visit. On July 14, 2014, the trial court entered an order prohibiting Stepfather from having any further contact with the Children and suspending Mother's overnight visits with the Children "until a licensed psychologist has successfully completed reintroduction therapy."

On July 21, 2014, the court entered the subject order awarding Mother and Father shared legal custody of the Children. Father was awarded primary physical custody during the school year, with Mother having periods of partial physical custody. Specifically, Mother was awarded partial physical custody of the Children on alternating weekends, from Friday at 5:00 p.m. until Sunday at 7:00 p.m. The court also awarded the parents shared physical custody during the summer months on an alternating two-week basis. On July 25, 2014, the court entered an order vacating the portion of its July 14, 2014 order which prohibited Stepfather from having contact with

the Children. Mother timely filed a notice of appeal from the July 21, 2014 order on August 6, 2014, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Mother filed an amended concise statement on August 8, 2014.

Mother now raises the following issues for our review, which we have reordered for ease of disposition.

[1]. Whether the [t]rial [c]ourt's Custody Order should be reversed because the [t]rial [c]ourt failed to address one of the custody factors under 23 Pa.C.S.[A.] § 5328(a)[?]

[2]. Whether the [t]rial [c]ourt erred by discounting the uncontradicted recommendations of the expert custody evaluator without explanation[?]

[3]. Whether the [t]rial [c]ourt finding that Mother is less stable than Father due to Stepfather's pending criminal charges is supported by competent evidence of record and is reasonable[?]

[4]. Whether the [t]rial [c]ourt's Custody Order should be reversed because the [t]rial [c]ourt's Order and Opinion is against the weight of the evidence and fails to accord adequate weight to Father's actions[?]

Mother's Brief at 8 (trial court responses and proposed answers omitted).

We address Mother's claims mindful of our well-settled standard of review.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately,

the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[2]

Instantly, the trial court considered the majority of the Section

5328(a) factors, and concluded that they were either irrelevant, or did not

---

[2] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services). Because Father's petition for special relief was filed prior to the effective date of the subsection, the subsection does not apply to the present case. *See* § 6 of 2013, Dec. 18, P.L. 1167, No. 107, effective 1/1/14.

favor either parent. Trial Court Opinion, 8/5/14, at 2-7. With respect to Section 5328(a)(11), the court concluded that the distance between the parents' residences did not allow for a shared custody schedule during the school year. *Id.* at 5. With respect to factor Section 5328(a)(4), the court found that awarding primary custody to Father would best serve the Children's need for stability and continuity, due to the unpredictable nature of Stepfather's pending criminal charges. *Id.* at 3. The court reasoned as follows.

> However, [Stepfather's] pending criminal charges lend an air of unpredictability with respect to the future. It is possible [Stepfather] may face jail time, adding another disruption to the [C]hildren's lives. Moreover, the financial situation of the family could be affected. Most importantly, Mother may lose a vital resource in daily childcare needs. As such, the [c]ourt finds that Father is more likely to provide stability and continuity in the [C]hildren's education, family life, and community life. The [C]hildren's stability is of particular importance to the [c]ourt. The [c]ourt regrets that the children have been placed in the middle of what seems [like] a never-ending battle between their parents. As a result, the [C]hildren have each been affected in his or her own way by the poisonous emotions displayed by both parents. The possibility of further disrupting the [C]hildren's lives at this time is anathema to the [c]ourt. Remaining with Father ensures the most stability and continuity in the [C]hildren's lives at the present time. Thus, the [c]ourt finds this factor in favor of Father.

*Id.*

At the conclusion of its opinion, the court provided the following additional explanation for awarding primary physical custody to Father.

> Finally, the [c]ourt is not comfortable granting primary custody to Mother when the [C]hildren will also reside with an individual facing criminal charges as a result of earlier custody

proceedings. Further, the fact that [Stepfather] did not present himself to the [c]ourt for this proceeding was of special significance. Having never met [Stepfather], and not having the ability to judge the sincerity of his apologies, the [c]ourt cannot find that it is in the [C]hildren's best interest to live with this individual. In committing these acts, [Stepfather] is essentially teaching the [C]hildren that it is okay to lie to get what you want. The [c]ourt would have liked testimony on how [Stepfather's] actions as a parental figure impacted the [C]hildren and how the family intends to reverse that effect. Even if [Stepfather] was not available to testify due to his pending criminal charges, the [c]ourt notes that his complete lack of presence did not lend any solidarity to his family.

In light of this, the [c]ourt finds in favor of Father. The inability to personally assess [Stepfather's] sincerity, coupled with the unpredictable nature of his criminal charges gives the court grave concern. Complications have arisen because of these charges and will most likely continue to affect the daily life of the [C]hildren. The [c]ourt wishes to avoid the possibility of wreaking further havoc in the [C]hildren's lives and feels the [C]hildren will have the most stability with Father. Accordingly, for the reasons set forth above, this [c]ourt found that it was in [the] Child[ren]'s best interest to remain in Father's primary custody.

*Id.* at 7-8.

On appeal, Mother's first issue is that the court erred by failing to consider all of the Section 5328(a) factors. Mother's Brief at 53-54. Specifically, Mother contends that the court failed to consider Section 5328(a)(2), which deals with "[t]he present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child." 23 Pa.C.S.A. § 5328(a)(2). We agree.

It is well-settled that "'**[a]ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order.'" *A.V. v. S.T.*, 87 A.3d 818, 822 (Pa. Super. 2014) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011)) (emphasis in original). "Mere recitation of the statute and consideration of the § 5328(a) factors *en masse* is insufficient." *S.W.D.*, 96 A.3d at 401 (citing *C.B. v. J.B.,* 65 A.3d 946, 950 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013)). A court must "set forth its mandatory assessment of the sixteen factors prior to the deadline by which a litigant must file a notice of appeal." *C.B.*, 65 A.3d at 955.

> In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with [the Child Custody Act].

*A.V.*, 87 A.3d at 823 (citations and quotation marks omitted).

Instantly, our review of record confirms that the trial court failed to address Section 5328(a)(2), either on the record or in a written opinion. While there has never been a finding of abuse against either parent or stepparent, accusations of abuse and concerns about the safety of the Children have played a prominent role in this matter. For example, the record indicates that Mother has reported Father to Children and Youth Services twice, and that she filed a protection from abuse petition in 2010,

alleging that the oldest Child, G.L.S., was being abused in Father's home. Similarly, during the August 21, 2013 special relief hearing, Father expressed concern about the safety of the Children when in the presence of Stepfather. N.T., 8/21/13, at 74-75. Dr. Shienvold prepared a risk assessment of Stepfather as part of his custody evaluation, "since questions were raised regarding the safety of the [C]hildren when around [Stepfather] or while in his care." Risk Assessment, 12/11/13, at 1. Dr. Shienvold concluded that Stepfather posed a low risk of harm to the Children. **Id.** at 1-2.

Thus, it was reversible error for the court to fail to address Section 5328(a)(2), and we conclude that it is necessary to vacate the court's order and remand this case so that the court may consider this factor as part of its custody analysis.[3] Upon remand, the trial court is directed to issue a new order and opinion, considering **all** of the Section 5328(a) factors, within forty-five days of the date of this memorandum.[4]

---

[3] At the conclusion of the argument section in her brief, Mother suggests that we should decide this matter on its merits and reverse the court's order, rather than remanding. Mother's Brief at 54-55 (citing **M.A.T.**, **v. G.S.T.**, 989 A.2d 11, 21 (Pa. Super. 2010) (*en banc*). We decline to do so. Where, as here, the trial court erred by failing to consider all of the Section 5328(a) factors, it is not our role to make the factual findings that the lower court failed to make. Rather, the appropriate course is to remand this case so that the court can correct its omission. **See, J.R.M.**, 33 A.3d at 652 n.5 (declining to make findings of fact and remanding for a new order and opinion where the trial court failed to consider the Section 5328(a) factors).

[4] In light of our conclusion that this case must be remanded for a new order and opinion, we do not address Mother's remaining arguments at this time.

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2015

---

Without a proper opinion considering all of the Section 5328(a) factors, we are unable to determine if the court abused its discretion by denying Mother primary physical custody.