J-A21010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| EDWARD GROSS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUTH R. GROSS | : | No. 722 EDA 2021 |

Appeal from the Order Entered March 12, 2021,
in the Court of Common Pleas of Philadelphia County,
Domestic Relations at No(s):  OC1900271.

BEFORE:   KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED DECEMBER 27, 2021**

Edward Gross (Father) appeals the order of the Philadelphia County Court of Common Pleas granting Ruth R. Gross (Mother) primary physical custody of their three-year-old son, E.G. (Child).  Father argues, ***inter alia***, that the custody award is unreasonable in light of the trial court's deficient findings of fact, pursuant to the Child Custody Act.  ***See*** 23 Pa.C.S.A. § 5328(a).  After careful review, we agree and remand with instructions.

The relevant background may be abbreviated as follows: The parties married in July 2016, the Child was born in 2018, and the parties separated in January 2019.  Thereafter, the parties filed respective custody complaints.

_____

[*] Former Justice specially assigned to the Superior Court.

Custody litigation spanned approximately 18 months, resulting in two interim orders, before the custody hearing began in August 2020.[1]

Those interim orders awarded primary physical custody to Mother, and partial physical custody to Father. Each party originally requested sole physical custody, but Father eventually changed his request to shared custody. During the pendency of the litigation, Father began employment as a high school teacher. Mother worked from the home as a private tutor. Mother lives with the Maternal Grandparents in a two-bedroom apartment in the Center City area of Philadelphia. Father lives approximately 30-45 minutes away in Villanova, where he resides with his fiancée and her two daughters (ages 5 and 7).

Litigation culminated with a final custody hearing, held remotely, over the course of several dates: August 27, 2020; October 29, 2020; February 9-10, 2021; and February 17, 2021. On March 12, 2021, the trial court issued its custody award and delineated its Section 5328(a) findings. By and large, the court determined that the custody factors favored neither parent. Nevertheless, the court awarded Mother primary physical during the months Father's school was in session; Father's partial physical custody was limited to the 2nd, 3rd, and 4th weekend of each month (Friday afternoon to Monday morning). Father also received the 5th weekend of the month, when applicable, as well as those federal holidays where his school was not in

---

[1] The Covid-19 pandemic contributed to the protracted litigation.

session. During the summer months, however, the court ordered physical custody to be shared, on a week-off-week-on basis.

Father timely-filed this appeal. He presents the following issues for our review:

1. Whether the trial court erred/abused its discretion in granting Mother primary physical custody and Father limited partial physical custody of the Child during the non-summer months, rather than granting the parties the same shared equal physical custody schedule of alternating weeks for the non-summer months that it provided for the summer months, or some variation thereof?

2. Whether the trial court erred/abused its discretion when it provided for a partial physical custody schedule for Father during the non-summer months which created a 10-11 day period of time each month during which the Child will not be in Father's physical care?

3. Whether the trial court erred/abused its discretion in further reducing Father's already limited partial physical custody time with the Child during the non-summer months by taking away Father's Sunday overnight once the child enters kindergarten?

Father's Brief at 13 (capitalization adjusted)

We begin our analysis by observing our well-settled scope and standard of review for custody matters:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who

viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**S.T. v. R.W.**, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

The crux of Father's first appellate issue is whether the record supports the trial court's physical custody scheme during the school year, given the trial court's failure to explain its reasoning. The Child Custody Act provides: "In ordering any form of custody, the court shall determine the best interests of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S.A. § 5328(a)(1)-(16). Apart from those factors affecting safety, the trial court is generally free to weight the factors as it sees fit. "The parties cannot dictate the amount of weight the trial court places on evidence." **A.V. v. S.T.**, 87 A.3d 818, 820 (Pa. Super. 2014) (citation omitted).

After conducting an analysis of the sixteen custody factors, the trial court "shall delineate its reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). We have elaborated:

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013) *appeal denied*, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which

- 4 -

> adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***D.Q. v. K.K.***, 241 A.3d 1112, 1118 (Pa. Super. 2020) (quoting ***A.V. v. S.T.***, 87 A.3d 818, 822-23 (Pa. Super. 2014)). "Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion." ***A.V.***, 87 A.3d at 820.

Mother opposes Father's appeal by relying on the above principles. She characterizes Father's arguments as an effort to dictate the amount of weight that the court should have attached to the evidence in order to analyze the Section 5328(a) factors. ***See*** Mother's Brief at 13; ***see also A.V.***, ***supra.*** Mother concludes we must deny Father's appeal, because the trial court has broad discretion to fashion custody orders. ***See id*** at 13-14 (citing ***M.J.M.***, ***supra***).

Father maintains he is not attempting to re-weigh the evidence, so much as he is trying to discern how the trial court arrived at its determination – specifically, why the court found that a primary/partial arrangement was in the Child's best interests during the school year, but not during the summer. ***See*** Father's Brief at 24. Father suggests that the trial court penalized him for his work schedule, but he concludes that the trial court erred by failing "to set forth its reasoning as to how its consideration/analysis of the Section 5328(a) factors determined the custody order that it fashioned[.]" ***Id***. According to Father, this error led to another. He reasons that without a

proper explanation from the trial court, the record does not support the trial court's custody award. *Id.* at 21.

After review, we agree with Father's argument that the trial court failed to properly delineate its reasoning under Section 5323(d). Soon after the current iteration of the Child Custody Act was enacted in 2011, this Court was tasked with interpreting Section 5323(d) ("Reasons for award"). We held that the trial court must delineate its reasons for its custody award prior to the deadline by which a litigant must file notice of the appeal. *See C.B. v. J.B.*, 65 A.3d 946, 954 (Pa. Super. 2013). We reasoned that if the litigant was forced to take an appeal without the benefit of the trial court's rationale, then the litigant would be in an untenable position of having "to guess as to which information the trial court found pertinent, and how the evidence informed the court's analysis of the Act's sixteen custody factors." *C.B.* 65 A.3d at 955. "[I]f the party guesses wrong, and omits discussion of an issue or fact that the trial court later states that it found to be pertinent, that issue may be waived." *Id.* Alternatively, the party could list "all possible issues that might arise from the trial court's ultimate explanation of the bases for its ruling," but then the appeal "could subject the party to waiver for over-inclusiveness or vagueness." *Id.*

Although *C.B.* concerned the *timing* of the trial court's delineation of its findings – not the level of detail – we conclude a similar problem has occurred here, resulting in the same prejudice towards Father. Given the trial court's vague explanation for its custody scheme, Father was left to guess why the

court decided that a primary/partial custody award would be in Child's best interests during the non-summer months.

Indeed, Father did guess. He presumed that the trial court granted primary physical custody to Mother, because he works outside the home while Mother does not. *See* Father's Brief at 21. Father concludes that such a basis would be grounds for a reversal under *Johnson v. Lewis*, 870 A.2d 368, 374 (Pa. Super. 2005) (holding that a parent's "work schedule may not deprive that parent of custody if suitable arrangements are made for the child's care in his absence.").[2] However, the trial court suggested in its Pa.R.A.P. 1925(a) opinion that Father's work schedule was not the reason for its award: "Contrary to Father's contention, the court did not penalize him for 'having to work,' but rather took into account Father's work schedule as a public school teacher in awarding him physical custody of [the Child] on all federal Monday holidays every year." *See* Trial Court Opinion (T.C.O.), 5/10/21, at 6.

If his work schedule was not the motivating reason why custody should be primary/partial during the non-summer months, Father could not otherwise ascertain the basis for the court's custody award from its Findings of Fact. Neither could we. As mentioned above, the law does not require a certain amount of detail for a court's explanation to be sufficient, only that the court's decision is based on the enumerated custody factors. *See D.Q.*, *supra*. Appellate interference is unwarranted so long as the trial court's

---

[2] Although this case predates the current iteration of the Child Custody Act, it retains persuasive value.

- 7 -

considerations were careful and thorough. *See A.V.*, 87 A.3d at 820. However, we will find error "where the trial court listed the Section 5328(a) factors but failed to apply them." *See C.A.J. v. D.S.M.*, 136 A.3d 504, 510 (Pa. Super. 2016) (citations omitted).

In our view, however, the trial court failed to provide sufficient explanation why a primary/partial award during the non-summer months was in the Child's best interests. The court's complete Section 5328(a) analysis is as follows:

**The court determined the best interests of Child upon consideration of all relevant factors, as mandated pursuant to 23 Pa.C.S.A. § 5328(a), as follows:**

**Factor (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.**

*Father is more likely to encourage and permit frequent and continuing contact between Child and Mother.*

*As an example of Father being likely to encourage and permit frequent and continuing contact between Child and Mother, Father's proposed custody arrangement is for shared equal physical custody, with Mother having Child every Wednesday…through Friday…and every other weekend[.] Father proposed that Mother have Facetime video chat with Child every day that Father has custody.*

*In contrast, Mother's proposed custody arrangement is for Father having partial physical custody every Saturday, 9:30 a.m. to 4:00 p.m., with one hour being supervised by a social worker for at least six months. In addition, Mother proposed that Father have only one Facetime video chat with Child per week.*

**Factor (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an**

**abused party and which party can better provide adequate physical safeguards and supervision of the child.**

*Mother testified to instances of Father's behavior which she characterized as abuse. Mother testified to Father having thrown water in her face and having pushed her on a bed while Child was in her arms prior to the parties' separation. Father testified that Child was not in Mother's arms and that she inadvertently landed on the bed when they each reached for Child at the same time.*

*Post separation, Mother and her parents testified that Father routinely addresses Mother and Maternal Grandmother in a curt, bullying, menacing manner during custody exchanges. Mother testified that Father verbally disparages her during the Facetime calls with Child. Mother testified that Father sends abusive test messages and that he engages in gaslighting.*

*The evidence is insufficient to establish that Mother is an abused party.*

*There is no credible evidence that Father has abused Child or that any of Father's above-described actions pose a continued risk of harm to Child. Each party is equally able to provide adequate physical safeguards and supervision of the Child.*

**Factor (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).**

[*Not applicable*]

**Factor (3) The parental duties performed by each party on behalf of the child.**

*Each party performs parental duties when Child is in the custody of that party*

**Factor (4) The need for stability and continuity in the child's education, family life and community life.**

*As a three-year-old, Child is entirely dependent upon his parents to provide stability and continuity in his family life. His education and community life necessarily revolve around*

*his family. It is in Child's best interest for the parties to nurture his family life by continuing to make possible his close relationship with all of his grandparents. Mother testified that she wants Child to have a relationship with parental grandmother.*

**Factor (5) The availability of extended family.**

*Mother and Child currently reside with Mother's parents in their two bedroom City Center Philadelphia home. Father's parents live in Bala Cynwyd, Pennsylvania, within close proximity to both Mother and Father. The extended family includes Mother's sister, Father's three sisters, and Child's cousins.*

*Both Maternal Grandmother and Paternal Grandmother provided care for Child while the parties resided together. For a period of time post-separation, Paternal Grandmother continued to provide care until Mother terminated her employment as a teacher and the arrangement with Paternal Grandmother changed. Maternal Grandparents live with Child and are available to him on a daily basis. Paternal Grandparents remain available to develop their familial relationship with Child. In the past, Paternal Grandparents have been available for financial support for the parties[….]*

**Factor (6) The child's sibling relationships.**

*Child has no siblings. Father resides with his fiancée who is the mother of two minor girls. Child has a good relationship with each of them.*

**Factor (7) The well-reasoned preference of the child, based on the child's maturity and judgment.**

*[Not applicable since Child is three-years-old]*

**Factor (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

*No credible evidence was presented of either parent attempting to turn Child against the other parent.*

**Factor (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship**

**with the child adequate for the child's emotional needs.**

*Each party is equally likely to maintain a loving, stable, consistent and nurturing relationship with Child adequate for his emotional needs. Mother testified she loves Child, that she thinks Father loves Child, and that Child loves her and Father.*

**Factor (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.**

*Each party is equally likely to attend to the daily physical, emotional, developmental, educational and special needs of Child when he is in the custody of that party.*

**Factor (11) The proximity of the residences of the parties.**

*Mother and Child currently reside with Mother's parents in their Center City Philadelphia home. Father lives in Villanova. Their residences are approximately a 30 to 45 minute drive apart.*

**Factor (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.**

*Each party is available to care for child or has the ability to make appropriate child-care arrangements. Mother is not currently working outside the home she shares with her parents. Father is employed as a high school teacher.*

**Factor (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

*There is currently a high level of conflict between the parties. Neither party displays much willingness to cooperate with the other. Their willingness to cooperate is hampered by mutual distrust and animosity. Mother has employed social media on the internet to label Father as an abuser. In her testimony, Mother stated that she hates*

*Father, and she characterized him as a pathological liar and a bad influence on Child.*

*At times, Mother has not made Child available for telephone calls per the current court order. At times, Father is verbally hostile towards Mother at custody exchanges. On the occasion of Yom Kippur 2020, Mother delayed Father's custodial time by more than one hour because Child was taking his afternoon nap. Father called [the] police in response. These instances of failure to cooperate serve to perpetuate the cycle in which the parties display mutual disregard for each other.*

*The court expects that the conflict between the parties will diminish with the institution of this final order. As they and Child become accustomed to the schedule established herein and as they engage in co-parenting counseling, the framework for enhanced cooperation is established and the opportunity for development of a productive co-parenting relationship is facilitated. Each party's adherence to the terms of the order may serve to lessen the mistrust and tension that currently exists between them.*

**Factor (14) The history of drug or alcohol abuse of a party or member of a party's household.**

*There is no evidence of drug abuse by either party or member of a party's household. Mother has a history of alcohol abuse and received in-patient treatment[…]. Mother testified that she has not consumed any alcohol since[…]. Mother currently takes [prescription drugs for her mental health]. Father currently is prescribed [drugs for his mental health].*

**Factor (15) The mental and physical condition of a party or member of a party's household.**

*Each party is currently in treatment with a mental health professional […]. [Father's psychiatrist] testified that Father has made significant improvement…[and] that Father does not have symptoms that would warrant limiting his contact with Child.*

*Mother testified that she is a recovering alcoholic and that [she meets with a social worker] every two weeks. …*

*Mother's level of functioning indicates to [the social worker] that Mother is stable and sober.*

*Maternal Grandmother has been in long-term therapy for treatment for anxiety.*

**Factor (16) Any other relevant factor.**

*The existence of the pandemic, coronavirus causing Covid-19, has required the parties to take extraordinary measures to protect the health of Child. The court determines that each of the parties is capable of following all safety guidelines mandated by federal, state, and local authorities and that each understands the dangers posed by failure to maintain social distancing, wearing masks, and quarantining when necessary.*

*Evidence established that during the early fall of 2020, Father did not follow all safety precautions while having custody of Child.*

*Evidence established that in December 2020, Father exercised custodial time with Child on the day after Father was tested for Covid-19. Father testified positive, and both Child and Mother subsequently tested positive. The court cannot determine a causative relationship between Father's having Covid-19 and Child and Mother subsequently testing positive. The court does determine that Father exercised poor judgment in exercising custodial time when he had reason to believe that there was a possibility that he had Covid-19.*

*See* Findings of Fact, dated 3/12/21, at 5-9 (formatting adjusted).

Importantly, the court did not find that any factor explicitly favored Mother, nor did the court explain why, based on the above criteria, the primary/partial arrangement was in the Child's best interests during the non-summer months. On the surface, it seems the evidentiary scale actually tipped in favor of Father. As Father readily points out, the trial court determined Section 5328(a)(1) favors him. Everything else appeared neutral.

While the court cited facts adverse to Father's position, the court also determined such facts were not so unfavorable to find that a given custody factor favored Mother (*see, e.g.,* Factor 2 and Factor 16).

Of course, the Section 5328(a) analysis is not a scorecard. A party does not prevail simply because the trial court determines a majority of factors favors them. We suppose any single factor could theoretically be dispositive given the circumstances, so long as the record supports such a determination. *See M.J.M. v. M.L.G.*, 63 A.3d at 339. ("It is within the trial court's purview as the finder of fact to determine which factors are the most salient and critical in each particular case.") (citation omitted). The weight that a trial court attaches to the factors is critical.[3] Often, a trial court's weighting of the factors is self-evident in its delineation of reasons. Here, it was not. And without sufficient explanation concerning the weight of the evidence, we cannot conclude the court's custody award is supported by the record.

In light of our disposition, we need not address Father's remaining issues. We presume the trial court, having presided over five days of hearings, is confident that its award is still in the Child's best interests. If so, the trial court shall issue supplemental findings to justify its original custody scheme. Alternatively, the court may reconsider its award and fashion a new order. In

---

[3] Father argues that a trial court may only give weighted consideration to those custody factors that impact the child's safety. **See** Father's Brief at 24. This is a misconstruction of the Child Custody Act. While Section 5328(a) obligates a court to give "weighted consideration" to these factors, we have never held that a court may only give such weight to the safety factors.

either event, no new hearing is necessary.  Either party may appeal thereafter.

In the meantime, however, we must vacate the order.  As it stands now, the

court's findings do not support its current custody award.

Order vacated.  Case remanded with instructions.  Jurisdiction

relinquished.

Judge Nichols concurs in the result.

President Judge Emeritus Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2021