J-S17031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| ALEXUS WYNDER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JOHN FLOOD | |
| Appellee | No. 2616 EDA 2021 |

Appeal from the Order Entered November 18, 2021
In the Court of Common Pleas of Monroe County
Civil Division at No: 5829 CV 2020, 699 DR 2019

BEFORE:  BOWES, J., LAZARUS, J. and STABILE, J.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 31, 2022**

Appellant, Alexus Wynder ("Mother"), appeals from an order dated November 18, 2021 (1) denying in large part her petition to modify an order granting Mother and Appellee, John Flood ("Father"), joint custody over their young twin sons, (2) granting Father's petition for modification of custody to give him primary physical custody, and (3) granting Father's petition to hold Mother in contempt for violating the court's December 14, 2020 custody order. We affirm.

On November 3, 2020, Mother filed a complaint in custody requesting the Court to grant her sole legal custody and also primary and/or sole physical custody of the children.[1]  On November 18, 2020, the court entered an interim

---

[1] The Complaint for Custody reflects that the parties' twin sons, C.W. and G.W., were born on July 27, 2018.  Complaint for Custody, 11/3/20, at 1.

order granting Mother sole physical custody of the children pending further order of court.

The court described subsequent proceedings as follows:

A Custody Conciliation Conference was held on or near December 3, 2020, at which Mother appeared *pro se* and Father appeared with counsel. An Order of Court was entered on December 14, 2020, providing for shared legal custody and Mother having primary physical custody subject [to] Father's partial physical custody during three weekends each month. Shortly thereafter, Mother filed a Petition for Modification of Custody on January 6, 2021, in which she alleged in an attached statement that the Court-appointed Custody Conciliator at the time of the recent Custody Conciliation Conference exhibited conduct that was biased and discriminatory against her because of Mother's race. Mother therein further disputed the recommendation issued by the Custody Conciliator for recommending legal custody be shared between the parents and made multiple accusations against the Father. Such accusations included Father's alleged absence as a parent, his purported verbal threats and abuse of Mother concerning custody matters, his alleged failures to support the minor children, and his opposition and/or refusal to participate in the children's physical therapy sessions. Mother further requested the Court to grant her sole legal custody of the children, limit Father's periods of partial physical custody, and require Father to provide all transportation of the children for custody exchanges.

On January 21, 2021, Father, through his counsel, filed a Petition for Contempt and Modification of Custody Order. Father therein alleged Mother's contempt of the Custody Order by her withholding of Father's visitation with the children on multiple occasions, her alleged refusal to allow Father's daily telephone calls with the children, her refusal to abide by Father's legal custody rights, and Mother's instigation of "issues" during custody exchanges. Father requested the Court find Mother in contempt of the Court's Order and further requested the Court modify the Custody Order by primary physical custody of the children to Father, or alternatively, shared physical custody. On March 16, 2021, a further Custody Conciliation Conference was held again with the same Conciliator, the parties as well as counsel representing the parties. By Custody Order dated April 5, 2021,

> the Court continued virtually the same custody rights for the parties as contained in its previous Order, but scheduled the case for a custody evidentiary hearing to consider Mother's Petition for Modification and Father's Petition for Contempt and Modification of Custody. In view of the continuing COVID-19 Pandemic, an evidentiary hearing was held via GoToMeeting videoconference platform on June 8, 2021, and the parties were thereafter provided time to file briefs and/or proposed findings with the Court.

Trial Court Opinion, 11/18/21, at 1-3.

On November 18, 2021, the court entered an opinion and order disposing of the parties' petitions. The court denied Mother's petition for modification of custody except for her request to modify the means of communication between Mother and Father. More specifically, the court directed Mother and Father not to e-mail, phone or text each other directly but instead to communicate through a website named OurFamilyWizard.com. Next, the court granted Father's motion to hold Mother in contempt for violating the prior custody order. The court did not impose sanctions but instead warned Mother that further violations would be subject to appropriate sanctions, including fines, loss of physical custody periods, or incarceration. Finally, based on its consideration of the sixteen factors articulated in the Child Custody Act at 23 Pa.C.S.A. § 5328, the court granted Father's petition to modify custody to give him primary physical custody subject to the time schedule delineated in the order.

Mother filed a timely appeal to this Court through counsel and filed a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. On January

27, 2021, the trial court filed a Pa.R.A.P. 1925(a) opinion incorporating its November 18, 2021 opinion by reference.

Mother raises the following issues in this appeal:

1. Whether the court erred in awarding primary physical custody to Father in failing to address and properly consider all of the factors relating to custody as set forth in 23 Pa.C.S[.]A. § 5328(a), as follows:

a. Factor 1: In failing to consider the length of time that the parties equally shared the children prior to custody order.

b. Factor 2: In failing to find Mother['s] and maternal grandmother's allegations of abuse credible.

c. Factor 4: In failing to find that this factor weighs in favor of Mother due to the stable relationship which the children enjoy with Mother; the fact that Mother has been the primary caregiver for the children's entire life and in failing to take into account the relationship and stability of Mother's family with the children.

d. Factor 5: In finding that this factor weighs in favor of Father by overstating the relationship the children have with Father's extended family given the limited contact the children have had with the Father and his extended family; in favoring the relationship with Father's extended family over that of Mother's extended family; disregarding testimony that Mother has a sister in Philadelphia and failure of the court to question the Mother about extended family outside of the local area.

e. Factor 10: The court erred in not favoring Mother for this factor. Mother was more readily available on a daily basis.

f. Factor 12: The court failed to develop this factor since one of Father's main child-care providers, paternal grandmother, did not testify.

g. Factor 13: In favoring Father despite the testimony that the parties agreed to shared physical custody prior to court involvement and disregarding Mother's testimony and reasons for keeping the children on Father's weekends.

- 4 -

2. Whether the court erred in granting Father's Petition for Contempt when the court found that Mother's alleged actions were not worthy of any sanctions and also hearing the Father's petition when the docket lacks proof of service of Father's Petition and fails to comply with attaching the Criminal Record/Abuse History Verification form required by Pa. R.C.P. No. 1915.3-2.

Mother's Brief at 6-8.  Father has not filed a brief in this Court.

In reviewing appeals from custody orders,

the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa. Super. 2009). Moreover,

on issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence.  Rather, the paramount concern of the trial court is the best interest of the child.  Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***Id.***  This Court must examine whether the evidence of record supports the trial court's conclusions.  ***Ketterer v. Seifert***, 902 A.2d 533, 539 (Pa. Super. 2006).  The discretion that a trial court employs in custody matters, however,

should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on

- 5 -

the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Id.*** at 540.

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006). Relevant to the determination of custody are the factors set forth in the Child Custody Act at 23 Pa.C.S.A. § 5328, which provides as follows:

§ 5328. Factors to consider when awarding custody.

(a) Factors. – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

*Id.* This Court has stated that "**[a]ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody

- 7 -

order." **_J.R.M. v. J.E.A._**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in

original). Further,

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **_C.B. v. J.B._**, 65 A.3d 946, 955 (Pa. Super. 2013), _appeal denied_, 70 A.3d 808 (Pa. 2013). . . .
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **_M.J.M. v. M.L.G._**, 63 A.3d 331, 336 (Pa. Super. 2013), _appeal denied_, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **_Id._**

**_A.V. v. S.T._**, 87 A.3d 818, 822-23 (Pa. Super. 2014). In compliance with

Section 5323(d), the trial court published a written opinion that analyzed all

sixteen custody factors under Section 5328.

In Mother's first argument on appeal, she objects to the trial court's

analysis of seven of the sixteen custody factors. First, Mother argues that the

court failed to properly analyze Section 5328(a)(1), "which party is more likely

to encourage and permit frequent and continuing contact between the child

and another party." Despite two minor inaccuracies in the trial court's

analysis, we conclude that it acted within its discretion by finding in Father's

favor on this factor.

The trial court reasoned:

This factor strongly favors Father. Father credibly testified he never attempted to keep the children away from their Mother and that he wants Mother to be in the children's lives. He cited examples of times he offered Mother additional time with the children despite it being his period of custody, such as during the holiday of Halloween in 2020 when he offered to divide the holiday to allow her to be with the children.

Conversely, the evidence showed that on multiple occasions Mother prevented Father from having contact with the children. Notably, Father reliably testified that after he refused to change the parties' private custody agreement to her liking, Mother purportedly filed a frivolous petition seeking a protection from abuse [PFA] order against him, alleging Father's threatening her life, threatening to keep the children from her forever, and his verbal and physical abuse of her. After such petition was dismissed with prejudice by the Court, Mother completely withheld the children from Father for weeks thereafter until the time of the parties' custody conciliation conference.

Further, even following the parties' attendance at the cited conference wherein Mother agreed that Father would be entitled to custody every other weekend starting December 4, 2020, Mother refused to permit father his weekend of custody on the weekend of December 18th through December 20th of 2020. Father also credibly testified that Mother refused to allow his regular video chats and telephone calls with the children for a period of approximately ninety days despite such communication being provided for in the December [14], 2021 Custody Order until Mother [ob]tained counsel's direction to permit such contacts in March of 2021.

Trial Court Opinion, 11/18/21, at 5-6. Later in its opinion, the trial court observed that Mother refused to give Father physical custody of the children during the first weekend of February 2021. *Id.* at 12.

The court's statement that Mother "completely withheld" the children from Father between the dismissal of her PFA petition in early November 2020 until the conciliation conference on December 3, 2020 is not correct. This

- 9 -

phrase implies that Mother had no right to withhold the children during this time period but did so anyway. In reality, Mother had the right to sole physical custody of the children between November 18, 2020 and the conciliation conference. This is because the court entered an interim order on November 18, 2020 granting Mother sole physical custody, and this order was not modified until after the conciliation conference.

Furthermore, the record contravenes the court's finding that Mother refused to permit Father his weekend of physical custody on the weekend of December 18-20, 2020. The parties agreed on two points during the December 3rd conciliation conference. First, Father was entitled to physical custody of the minor children "on the first, second and fourth weekends of each month." Recommendation of Conciliator, at 6. Second,

> pending the entry of a Court Order . . . [Father] shall exercise periods of partial physical custody on alternating weekends beginning on Friday December 4, 2020, from Friday at 6:00 p.m. until Sunday at 6:00 p.m. Upon entry of Court Order based upon this Recommendation, the terms of the Order shall supersede the terms of Father's temporary periods of custody set forth herein.

*Id.* In an order docketed on December 14, 2020, the court adopted the conciliator's recommendation as an order of court. As a result of the December 14 order, the alternating weekends provision, which would have given Father custody on the weekend of December 18-20, was no longer in force. Instead, the provision giving Father custody on the first, second and fourth weekends was in force, leaving Father without custody on December 18-20 because it was the third weekend in December.

- 10 -

Despite these inaccuracies, the bulk of the court's findings support its decision in Father's favor. Both Father and Mother testified during the custody hearing. Father testified that he wanted Mother in the children's lives, that he never attempted to keep Mother out of the children's lives, and that he offered additional custody time to Mother such as Halloween in 2020. N.T., 6/8/21, at 67-69. Father also testified Mother filed a baseless PFA petition immediately after Father refused her custody demands, and Mother also refused to allow video chats and telephone calls with the children until March 2021. *Id.* at 69-71. Mother also withheld physical custody of the children during the first weekend in February 2021. *Id.* at 82-83. The court found Father's testimony credible, and we defer to this finding because it rests upon the court's observations of Father's demeanor and credibility. *R.M.G., Jr.*, 986 A.2d at 1237. Given this finding, and given the "utmost respect" that we accord to the trial court's discretion in custody matters, *Ketterer,* 902 A.2d at 539, we conclude that the court acted within its discretion by determining that Father is more likely than Mother to encourage and permit frequent and continuing contact between the children and the other party.

Next, Mother complains that the court failed to properly analyze Section 5328(a)(2), "the present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child."

The trial court wrote on this subject:

Mother previously made allegations of verbal and physical abuse against Father in a [PFA] Petition, but such Petition was dismissed by the Court with prejudice. Further, although Mother did peripherally allege in her modification petition concerns about Father's abusive treatment to her, the Court did not find the testimony provided by Mother and the maternal grandmother of such abuse allegations to be credible. Thus, this factor favors neither party.

Trial Court Opinion, 11/18/21, at 6. In response, Mother submits a boilerplate argument, "The trial [j]udge erred when he did not find Mother, maternal grandmother and maternal grandfather credible with their testimony pertaining to the verbal abuse and threats that Father has made against Mother." Mother's Brief at 22.

We defer to the court's finding that Mother, the maternal grandmother and the maternal grandfather were not credible, because we must defer to the court's findings on credibility. *R.M.G., Jr.*, 986 A.2d at 1237. Thus, the court acted within its discretion by finding that this factor did not favor either party.

Mother argues that the court failed to properly analyze Section 5328(a)(4), "the need for stability and continuity in the child's education, family life and community life." The court concluded:

This factor is neutral. Since birth the children have lived in the home of the maternal grandparents with Mother. Before the parties separated, Father also spent significant time there. At the time of the evidentiary hearing, Mother had been unemployed for nearly 6 months but claimed to be actively looking for work. The children attend daycare on a regular basis. The maternal grandmother is available to provide care to the children if she is

- 12 -

not working. Father testified that he believes he can better provide better stability in the lives of the children in view of the structured schedule he provides for them while they are in his custody, as well as the consistent work schedule he has with his employer. He testified to his extended family's close relationship with the children and also stated his intention to enroll the children in an early-learning center if he is granted primary custody. In view of the foregoing and also the young age of the children at issue, we find this factor does not favor either party.

Trial Court Opinion, 11/18/21, at 7-8. Mother argues:

The Judge erred in finding this a neutral factor. This factor should be weighed in favor of Mother as she had most of the weekday custody and the children resided in her home since birth. The children were also enrolled in a day care program that provided structure to the children. It should be noted that the trial court's decision was not entered until over five (5) months after the evidentiary hearing.

Mother's Brief at 23.

Mother asks us to override the court's determination by reweighing the evidence, determining that the court arrived at the wrong decision, and substituting our own judgment that Mother provides the more stable environment. We, however, must give "utmost respect" to the trial court's decisions in custody proceedings. *Ketterer,* 902 A.2d at 539. The trial court made a judgment call on this issue after carefully weighing the evidence and arguments presented by both parties. In accordance with the standard of "utmost respect," we conclude that the trial court's decision was well within its discretion.

Next, Mother argues that the court failed to properly analyze Section 5328(a)(5), the availability of extended family. The trial court held that this factor favored Father:

> The children, C.W. and G.W., live in the home of the maternal grandparents with Mother. The maternal grandmother is available to provide care to the children when she is not working. The maternal grandfather testified that he is not a childcare resource in that he is often working, but regardless, he told his daughter he is "not changing diapers anymore" since he previously did that. Mother testified that, other than her parents, she has no extended family to rely upon.
>
> Concerning Father, the paternal grandmother lives with him in the same house and she is available to care for the children. Further, the paternal aunt of the children and her children, being cousins of the children, live approximately 15 minutes from Father. The aunt and her children have a good relationship with C.W. and G.W., according to his testimony. The children also have a paternal aunt and uncle who live in New York State with cousins of such relatives. Father testified that such relatives from New York have a very strong relationship with himself and the children. This factor favors Father in view of the numerous extended paternal family members that are available.

Trial Court Opinion, 11/18/21, at 8-9. Mother argues that this factor should be neutral

> as each party has two local extended adult family members that are available. The trial judge did not ask Mother about non-local extended family members. The court also disregarded testimony that Mother has a sister that lives in Philadelphia. Father's extended relatives in New York are not local.

Mother's Brief at 23.

Once again, Mother asks us to override the court's determination by reweighing the evidence, determining that the court arrived at the wrong decision, and substituting its own judgment on this factor. We repeat that we

- 14 -

must give "utmost respect" to the trial court's decisions in custody proceedings. ***Ketterer,*** 902 A.2d at 539. The trial court made a judgment call on the question of availability of extended family after carefully weighing the evidence and arguments presented by both parties. In accordance with the standard of "utmost respect," we conclude that the trial court's decision was well within its discretion.

Mother objects to the trial court's analysis of three other factors, Section 5328(a)(10) (which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child), (a)(12) (each party's ability to care for the child or make appropriate child care arrangements), and (a)(13) (level of conflict between the parties and the willingness and ability of the parties to cooperate with one another). The court carefully reviewed each factor and found that factors (a)(10) and (a)(12) favored neither party. The court held that factor (a)(13) strongly favored Father due to Mother's violation of the December 14, 2020 custody order, including her refusal to permit physical custody during the first weekend in February 2021 and her refusal to permit video chats between December 2020 and March 2021.

As she did with regard to multiple factors discussed above, Mother contends that we should determine that the court's analysis of Section 5328(a)(10), (a)(12), and (a)(13) was faulty and substitute a decision more favorable to Mother. Our standard of review of "utmost respect" to the trial

court's decisions in custody proceedings, **Ketterer,** 902 A.2d at 539, prohibits us from reweighing the evidence in the manner suggested by Mother. Applying this deferential standard, we conclude that the trial court's decisions on each factor were within its discretion.

For these reasons, we decline to disturb the trial court's decision to give Father primary physical custody subject to the time schedule delineated in the court's order.

In her next argument, Mother objects to the trial court's decision to hold her in contempt for violating the December 14, 2020 order. Mother is not entitled to relief.

Mother contends that the evidence does not demonstrate that she acted with wrongful intent or that she violated the December 14, 2020 order. Mother has waived these issues by failing to raise them in her Pa.R.A.P. 1925(b) concise statement of appeal. **Kaur v. Singh**, 259 A.3d 505, 510 n. 2 (Pa. Super. 2021) (former husband waived argument on appeal that final PFA order, which excluded former husband from going near former wife's residence and from attending former wife's place of worship while she was there on Sundays, violated right to free exercise of religion under the Pennsylvania Constitution, where former husband did not specifically raise a challenge to PFA order pursuant to the Pennsylvania Constitution in Rule 1925(b) statement). Even if Mother had raised these issues, it is clear from the record that Mother intentionally violated the December 14, 2020 order by

refusing to give Father physical custody of the children during the first weekend of February 2021 and by denying Father video chats with the children until March 2021.

The only contempt-related issue that Mother raised in her Rule 1925(b) statement was the claim that she never "received proper notice" of the contempt petition. Pa.R.A.P. 1925(b) statement, ¶ 1(h). The record provides no indication that Father failed to serve Mother with his contempt petition. Indeed, it appears from the record that Mother failed to claim lack of notice until her Rule 1925(b) statement. We cannot find any objection by Mother prior to or during the June 8, 2021 evidentiary hearing; nor does Mother bring any such evidence to our attention. Accordingly, this argument fails.

For these reasons, we affirm the November 18, 2021 order in all respects.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2022