J-A08029-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JACLYN COCCO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSARIO PALMIERI, JR. | : | |
| | : | |
| Appellant | : | No. 2429 EDA 2025 |

Appeal from the Order Entered August 29, 2025
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2018-004825

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 29, 2026**

Appellant, Rosario Palmieri, Jr.  ("Father") appeals from the Final Custody Order dated August 28, 2025, entered August 29, 2025, by the Delaware County Court of Common Pleas granting primary physical custody of the parties' three minor children to Appellee, Jaclyn Cocco ("Mother"), and partial physical custody to Father. After careful review, we affirm.

By way of background, Father and Mother have three minor children together, the oldest child having been born in February of 2014 and the youngest in April of 2017. Findings of Fact in Support of Custody Order Dated 8/28/2025 (hereinafter "Findings of Fact") at page 1. On June 21, 2018, Mother filed for custody of all three children. *Id.* At that time, Mother resided in Pennsylvania while Father had moved to New Jersey. *Id.* On or around

_____

[*] Former Justice specially assigned to the Superior Court.

September 12, 2018, the Honorable William C. Mackrides of the Court of Common Pleas of Delaware County determined the home state of the children to be Pennsylvania, and several months thereafter entered a Temporary Custody Order awarding joint legal custody, primary physical custody to Mother, and partial physical custody to Father. *Id.* at 1-2

Relevant to the instant appeal, this custody matter was reassigned in or about May of 2025 to the Honorable Judge Rachel Ezzell Berry, also of the Court of Common Pleas of Delaware County, and the matter proceeded to a custody trial before Her Honor on August 21, 2025. Trial Court Opinion 10/16/2025 at 1. By that time, the trial court noted, the docket was rife with "many Petitions for Contempt, Petitions for Special Relief, and other petitions (name changes, reunification, sanctions, and more) filed between the parties," demonstrating the high degree of conflict. Trial Court Opinion 10/16/2025 at 1. Following trial, Judge Berry entered the custody order dated August 28, 2025, which reduced father's, custodial time. It is from this order which Father now appeals.

We are presented with the following issues for review:

I.   WHETHER THE COURT ABUSED ITS DISCRETION BY RENDERING AN ORDER UNREASONABLE IN LIGHT OF ITS FACTUAL FINDINGS CONTRARY TO THE BEST INTERESTS FACTORS

II.  WHETHER IT WAS AN ABUSE OF DISCRETION TO RELY UPON TO [sic] PERSONAL EXPERIENCES IN RENDERING THE 8/28/25 ORDER.

III. WHETHER THE COURT ABUSED ITS DISCRETION BY ISSUING AN ORDER WHICH FAILS TO CONSIDER COURT-APPOINTED EVALUATOR'S TESTIMONY AND REPORTS.

IV. WHETHER THE FAILURE TO HEAR PETITIONS IN A TIMELY MANNER RESULTED IN A VIOLATION OF DUE PROCESS.

V. WHETHER THE COURT COMMITTED REVERSIBLE ERROR AND ABUSED DISCRETION IN RENDERING ITS FINAL ORDER DESPITE THE EXTENSIVE RECORD BEFORE IT.

Appellant's Brief at 26.

As father's first and fifth issues are functionally identical, we will address them as one.

We review custody orders for an abuse of discretion. We will not find such an abuse merely because we would have reached a different conclusion. Rather, an abuse of discretion occurs only if the trial court overrode or misapplied the law in reaching its conclusion, or the record shows the trial court's judgment was manifestly unreasonable or the product of partiality, prejudice, bias, or ill will.

Moreover, our scope of review is broad. Because this Court does not make independent factual determinations, however, we must accept findings of the trial court that are supported by competent evidence of record. **Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand.** We are not, however, bound by the trial court's deductions or inferences. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. As this Court has held, **it is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion**.

When a trial court orders a form of custody, the best interest of the child is paramount. The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. To that end, the Child Custody Act sets forth sixteen factors that a court must consider before making any custody determination. ***It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.***

***Taylor v. Smith***, 302 A.3d 203, 206-207 (Pa. Super. 2023)(internal citations omitted, emphasis added).

The core contention in Father's first and fifth issues is that the trial court ought to have afforded more weight to the custody factors which favored Father than was afforded to those which favored Mother. Of particular note, Father takes issue with the lower court's order increasing Mother's custodial time despite the court finding that mother has engaged in acts of alienation including, *inter alia*, not meaningfully encouraging the children to go with Father during drop-offs, not disciplining the children for refusing to do so, and expressing undue concern for the children's safety while in Father's custody.

To the extent Father contends that this court has mandated dispositive weight be attributed to factors concerning parental alienation as a matter of law, he is incorrect. Indeed, it appears that the authority to which Father cites in support of this contention either does not exist or does not stand for the proposition for which he asserts it does. Notably, Father's brief includes the following quotation:

"Where the record demonstrates that one parent has engaged in a sustained campaign to alienate the children from the other

parent, … [t]he court must act to protect the best interests of Children and cannot permit a parent to benefit from such misconduct. [sic] E.D., 33 A.3d at 83 [sic].

Appellant's Brief at 39-40 (emphasis present in original, ending quotation marks missing in original).

This Court can find no such case using the citation provided by Father, nor any other source for the quoted language. Rather, the citation provided directs this Court to **Discover Bank v. Stucka**, 33 A.3d 82 (Pa. Super. 2011), an opinion entirely unrelated to child custody and containing no discussion of parental alienation.

Additionally, Father cites to this Court's opinion in **S.M. v. J.M.**, 811 A.2d 621, 625 (Pa. Super. 2002), in favor of the proposition that "failing to remedy alienation and pattern of obstruction would 'irreparably harm' child [sic]" and thus, presumably, would require reversal. Appellant's Brief at 40. While Father's citation did indeed bring this court to an extant opinion, it simply does not say what Appellant says it does. Our opinion in **S.M. v. J.M** did not discuss parental alienation, it does not include the phrase "irreparably harm" at any point, and further we discern no manner in which our holding in that case is relevant to Father's argument.[1]

---

[1] As a result of the aforementioned issues regarding Appellant's dubious citations, "this Court is left to guess whether this counterfeit authority is the product of a chatbot, or if there is a more nefarious explanation for the misinformation." **Commonwealth v. Shie**, 307 A.3d 668, 2023 WL 6878610, at *7 n.7 (Pa. Super. 2023)(unpublished); **see also Sanders v. United**
*(Footnote Continued Next Page)*

After thorough review of the record, we see no basis to doubt the trial court's representation that the court "took those facts [relative to mother's alienation of the children] seriously," and "weighed those factors involving those factual findings [] in Father's favor," but, in taking into consideration all evidence before it, elected to "emphasize[] different factors in making its ultimate decision." Trial Court 1925(a) Opinion 10/16/2025 at 12. Such decisions are the prerogative of the trial court in making a determination as to the best interest of the children, and, again, this Court will not intervene absent an abuse of discretion. **Taylor, supra**.

Here, we observe that while the trial court indeed found several factors to favor Father, and several factors to favor neither parent, there were a significant number of factors found to favor Mother. We note the following from the trial court's findings of fact: Mother has been the primary caretaker of the children for almost eleven years; the children are thriving in their current school district, are engaged in extracurricular activities, have strong relationships with their friends, teachers, and coaches; they are surrounded by mother's extended family who live nearby and regularly participate in the children's lives; and mother has been an overall more consistent source of

_____

**States**, 176 Fed.Cl. 163, 169 (Fed. Cl. 2025)(observing "[i]t is no secret that generative AI programs are known to 'hallucinate' nonexistent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and *pro se* litigants have cited such fake, hallucinated cases in their briefs" (citation omitted)).

stability and care for the children. Findings of Fact at 20-30. The lower court also noted that father voluntarily moved several hours away from the children, had stopped attending their extracurricular activities, did not make any efforts to call the children in the year preceding trial, the children are unfamiliar with the school district in which Father now lives, and the distance between Father and the children's primary residence makes frequent travel difficult. Findings of Fact at 20-30, 31-32.

It is certainly not unreasonable under these circumstances to craft an order which prioritizes stability by leaving primary custody with Mother and somewhat reducing Father's custodial time. As we have repeatedly emphasized, "the polestar of child custody law is to serve the best interests of the child." **T.M. v. H.M.**, 210 A.3d 283, 292 (Pa. Super. 2019); **see also K.T. v. L.S.**, 118 A.3d 1136, 1157 (Pa. Super. 2015); **C.B. v. J.B.**, 65 A.3d 946, 961 (Pa. Super. 2013).

Thus, we discern no abuse of discretion relative to Father's first and fifth issues and find these issues merit no relief.

Father's second issue challenges the trial court's ostensible reliance on "personal experience," which he contends the trial court allowed to supersede both the law and the record before the court as the impetus for the lower court's custody order. Appellant's Brief at 93. Of note, in his brief, Father seeks reversal and remand to "an unbiased judge," for new proceedings in this matter. **Id.** However, as noted by the trial court, at no point during the

proceedings below did Father move the court to recuse herself. Trial Court Opinion 10/16/2025 at 29. Furthermore, in his brief, Father cites only to precedent addressing lower court denials of motions to recuse. Appellant's Brief at 93.

Thus, we find that Father has waived this issue for failure to move for recusal of the lower court. Pa.R.A.P. 302(a).

Father contends in his third issue that the trial court erred by failing to consider the testimony and reports of Dr. Ken Lewis, a court-appointed evaluator. Of note, the testimony at issue consists of an incomplete direct examination conducted before the honorable Judge Mackrides in November of 2024. Appellant's Brief at 97. However, Father did not call Dr. Lewis to the stand during the expedited August 21, 2025, custody trial before Judge Berry. Notes of Testimony 8/21/2025 at 38-39. As a result, Mother was not afforded an opportunity to cross-examine the witness, nor did Mother call her own competing expert witness, who had also conducted an evaluation of the children. Trial Court Opinion at 35. While we acknowledge the trial court did take judicial notice of the incomplete testimony offered in November of 2024, upon doing so the court made clear it would only "assign [the testimony] whatever probative value [the court thought was] worthwhile." N.T. 8/21/2025 at 38. Father did not object to the court's qualifying statement, and thus this issue is waived. *Id.*; Pa.R.A.P. 302(a).

Furthermore, even should we endeavor to review Father's claim, there is no significant discussion of the expert's opinion in this section of his brief. Appellant does not identify which recommendations or concerns offered by the expert are not served or are otherwise disregarded by the trial court's order, but instead contends that the trial court's having not explicitly referenced this testimony in rendering her ruling is itself demonstrative of error. Appellant's Brief at 96. In support of this proposition, Father seems to attempt to cite to *In re D.A.*, 801 A.2d 614 (Pa. Super. 2002)[2]. However, nothing in that opinion supports any such holding, nor does the opinion address analogous circumstances, and as such this court finds it is not instructive.

In addition to citing no sources which support this novel proposition, Father develops no coherent argument as to why this Court should hold that a trial court deciding custody matters must explicitly reference any expert witness whose testimony appears of record when issuing a ruling or opinion. We decline to develop one for him. **Commonwealth v. Lawrence**, 2024 PA Super 59, 313 A.3d 265, 278 n.3 (Pa. Super. 2024) ("It is well settled that this Court will not act as counsel and will not develop arguments on behalf of an appellant.")

---

[2] The citation provided by Father reads " D.A. v. R.A., 801 A.2d 614 (Pa. Super 2002)." Appellant's Brief at 96. However, the provided citation leads this Court to the above-cited opinion.

Father's fourth issue challenges the trial court's apparent delay in ruling on various petitions he had filed over the several years preceding the August 21, 2025, trial. In support of his argument, Father cites to, *inter alia*, a May, 2025, e-mail correspondence between his then-counsel and court staff bringing these petitions to the lower court's attention following Judge Berry's then-recent assignment to this matter. Shortly thereafter, on June 6, 2025, Father filed an additional petition for contempt, and a hearing was scheduled for June 12, 2025.

At the outset of that hearing, the lower court, with the assistance of counsel, assembled a list of petitions which had at that time not yet been ruled upon. During that hearing, the lower court proposed consolidation of the outstanding petitions as each addressed "the same nucleus of activity," and no party objected. Notes of Testimony 6/12/2025 at 6-10. Following testimony regarding mother's alleged contempt, the lower court noted that it would continue to hold the pending petitions in abeyance. *Id.* Again, Father did not object to this ruling, nor did he raise the issue of the pending contempt petitions during the August 21, 2025, trial.

Now on appeal, father contends that the trial court's delay in ruling on these petitions violated his due process rights. However, as Father did not object to the trial court's clear ruling holding these matters in abeyance, and he did not revisit this issue prior to the instant appeal, we find that the issue has been waived. Pa.R.A.P. 302(a).

For the foregoing reasons, we find that Father has failed to present any issues meriting relief, and thus, we affirm.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/29/2026